The State of Ohio, Appellee, *v.* Koss, Appellant.

[Cite as State *v.* Koss (1990), 49 Ohio St. 3d 213.]

(No. 88-1908 — Submitted December 5, 1989 — Decided March 7, 1990.)

214

*John T. Corrigan,* prosecuting attorney, *George J. Sadd* and *Robert G. Trusiak,* for appellee.

*David R. Harbarger* and *Stuart A. Saferin,* for appellant.

ALICE ROBIE RESNICK, J. We shall first address whether the trial court erred in refusing to admit evidence of the battered woman syndrome. The trial court excluded the testimony based on the earlier decision of this court in *State* v. *Thomas* (1981),

66 Ohio St. 2d 518, 20 O.O. 3d 424, 423 N.E. 2d 137.

In *Thomas, supra,* the defendant alleged that she killed her common-law husband in self-defense. The trial court did not allow the defendant to introduce expert testimony on the battered woman syndrome in support of her defense. This court held that expert testimony on the battered woman syndrome was "inadmissible in evidence where (1) it is irrelevant and immaterial to the issue of whether defendant acted in self-defense at the time of the shooting; (2) the subject of the expert testimony is within the understanding of the jury; (3) the 'battered wife syndrome' is not sufficiently developed, as a matter of commonly accepted scientific knowledge, to warrant testimony under the guise of expertise; and (4) its prejudicial impact outweighs its probative value." *Id.* at syllabus.

In the case before us, appellant urges this court to overrule *Thomas, supra,* and hold that the trial court incorrectly excluded expert testimony as to the battered woman syndrome.

In *Thomas, supra,* at 521, 20 O.O. 3d at 426, 423 N.E. 2d at 139, we stated that "such expert testimony is inadmissible because it is not distinctly related to some science, profession or occupation so as to be beyond the ken of the average lay person. Further-

more, no general acceptance of the expert's particular methodology has been established." However, since 1981, several books and articles have been written on this subject.[1] In jurisdictions which have been confronted with this issue, most have allowed expert testimony on the battered woman syndrome. See *People* v. *Torres* (1985), 128 Misc. 2d 129, 135, 488 N.Y. Supp. 2d 358, 363; *State* v. *Hodges* (1986), 239 Kan. 63, 71, 716 P. 2d 563, 567; *Smith* v. *State* (1981), 247 Ga. 612, 277 S.E. 2d 678; *Hawthorne* v. *State* (Fla. App. 1982), 408 So. 2d 801; *State* v. *Kelly* (1984), 97 N.J. 178, 202, 478 A. 2d 364, 375-376.

Appellant argues that expert testimony on the battered woman syndrome is essential to her claim of self-defense. In Ohio, to prove self-defense it must be established that the person asserting this defense had "* * * a *bona fide belief* that he [she] was in imminent danger of death or great bodily harm and that his [her] only means of escape from such danger was in the use of such force." (Emphasis added.) *State* v. *Robbins* (1979), 58 Ohio St. 2d 74, 12 O.O. 3d 84, 388 N.E. 2d 755, paragraph two of the syllabus.

Thus, Ohio has adopted a subjective test in determining whether a particular defendant properly acted in self-defense. The defendant's state of mind is crucial to this defense. See

---

[1] See, *e.g.,* Walker, The Battered Woman (1979); Walker, The Battered Woman Syndrome (1984); Ewing, Battered Women Who Kill (1987); Browne, When Battered Women Kill (1987); Rosen, Battered Wives: A Comprehensive Annotated Bibliography of Articles, Books and Statutes in the United States of America (1988); Comment, The Admissibility of Expert Testimony on Battered Wife Syndrome: An Evidentiary Analysis (1982), 77 N.W. U. L. Rev. 348; Mather, The Skeleton in the Closet: The Battered Woman Syndrome, Self-Defense, and Expert Testimony (1988), 39 Mercer L. Rev. 545; Waits, The Criminal Justice System's Response to Battering: Understanding the Problem, Forging the Solutions (1985), 60 Wash. L. Rev. 267; Schneider, Describing and Changing: Women's Self-Defense Work and the Problem of Expert Testimony on Battering (1986), 9 Women's Rights L. Rptr. 195, 196, at fn. 5.

*State* v. *Smith* (1983), 10 Ohio App. 3d 99, 101, 10 OBR 122, 125, 460 N.E. 2d 693, 696-697; *State* v. *Thomas* (1983), 13 Ohio App. 3d 211, 213, 13 OBR 261, 262-263, 468 N.E. 2d 763, 765.

The trial court in the instant case properly instructed the jury that it must put itself in the position of the appellant in determining whether she acted in self-defense:

"In determining whether the Defendant had reasonable grounds for an honest belief that she was in imminent danger, you must put yourself in the position of the Defendant, with her characteristics, knowledge, or lack of knowledge, and under the same circumstances and conditions that surrounded the Defendant at the time. You must consider the conduct of Michael Koss and determine if such acts and words caused the Defendant to reasonably and honestly believe that she was about to be killed or to receive great bodily harm."

Expert testimony in Ohio is admissible if it will assist the trier of fact in search of the truth. See *Kitchens* v. *McKay* (1987), 38 Ohio App. 3d 165, 528 N.E. 2d 603. However, when such knowledge is within the ken of the jury, expert testimony is inadmissible. See *Bostic* v. *Connor* (1988), 37 Ohio St. 3d 144, 524 N.E. 2d 881, paragraph three of the syllabus; *Lee* v. *Baldwin* (1987), 35 Ohio App. 3d 47, 519 N.E. 2d 662.

Further, Evid. R. 702 provides: "If scientific, technical, or *other specialized knowledge* will assist the trier of fact to understand evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." (Emphasis added.)

Appellant argues that expert testimony regarding the battered woman syndrome is admissible to help the trier of fact understand the syndrome and decide whether she is in fact a battered woman who possessed reasonable grounds for an honest belief that she was in imminent danger.

Expert testimony regarding the battered woman syndrome can be admitted to help the jury not only to understand the battered woman syndrome but also to determine whether the defendant had reasonable grounds for an honest belief that she was in imminent danger when considering the issue of self-defense. "Expert testimony on the battered woman syndrome would help dispel the ordinary lay person's perception that a woman in a battering relationship is free to leave at any time. The expert evidence would counter any 'common sense' conclusions by the jury that if the beatings were really that bad the woman would have left her husband much earlier. Popular misconceptions about battered women would be put to rest, including the beliefs that the women are masochistic and enjoy the beatings and that they intentionally provoke their husbands into fits of rage. See Walker, The Battered Woman, 19-31 (1979)." *State* v. *Hodges* (1986), 239 Kan. 63, 68-69, 716 P. 2d 563, 567. See, also, *Smith* v. *State, supra,* at 618-619, 277 S.E. 2d at 683; *Hawthorne, supra; Torres, supra,* at 133-134, 488 N.Y. Supp. 2d at 362.

As the Supreme Court of New Jersey stated in *State* v. *Kelly, supra,* at 193, 478 A. 2d at 371:

"[']Battered women include wives or women in any form of intimate relationships with men. Furthermore, in order to be classified as a battered woman, the couple must go through the battering cycle at least twice. Any woman may find herself in an abusive relationship with a man once. If it occurs a second time, and she remains in

the situation, she is defined as a battered woman.[']" (Quoting Walker, The Battered Woman [1979], at *xv.*)

"* * *[E]xpert testimony would be essential to rebut the general misconceptions regarding battered women.

"The difficulty with the expert's testimony is that it *sounds* as if an expert is giving knowledge to a jury about something the jury knows as well as anyone else, namely, the reasonableness of a person's fear of imminent serious danger. That is not at all, however, what this testimony is *directly* aimed at. It is aimed at an area where the purported common knowledge of the jury may be very much mistaken, an area where jurors' logic, drawn from their own experience, may lead to a wholly incorrect conclusion, an area where expert knowledge would enable the jurors to disregard their prior conclusions as being common myths rather than common knowledge." (Emphasis *sic.*) *Kelly, supra,* at 206, 478 A. 2d at 378.

Thus, admission of expert testimony regarding the battered woman syndrome does not establish a new defense or justification. Rather, it is to assist the trier of fact in determining whether the defendant acted out of an honest belief that she was in imminent danger of death or great bodily harm and that the use of such force was her only means of escape. See *Robbins, supra; State* v. *Anaya* (Me. 1981), 438 A. 2d 892, 894. "A *history* of physical abuse alone does not justify the killing of the abuser. Having been physically assaulted by the abuser in the past is pertinent to such cases only as it contributes to the defendant's state of mind at the time the killing occurred; e.g., in that it formed the basis for the woman's perception of being in imminent danger of severe bodily harm or death at the hands of her partner." (Emphasis *sic.*) Browne, When Battered Women Kill (1987) 175.

We believe that the battered woman syndrome has gained substantial scientific acceptance to warrant admissibility. See *Torres, supra,* at 135, 488 N.Y. Supp. 2d at 363; *Hodges, supra,* at 71, 716 P. 2d at 568; *Smith* v. *State, supra.*[2]

---

[2] We note H.B. No. 484, which was introduced on May 2, 1989. This bill specifically authorizes admission of expert testimony on "battered wife or woman syndrome" in a criminal action in order "to establish the belief of an imminent danger of death or great bodily harm that is an element of the affirmative defense of self-defense * * *." The bill reads, in pertinent part:

"Section 1. That section 2945.39 be amended and sections 2901.06 and 2945.391 of the Revised Code be enacted to read as follows:

"Sec. 2901.06. (*A*) THE GENERAL ASSEMBLY HEREBY DECLARES THAT IT RECOGNIZES BOTH OF THE FOLLOWING, IN RELATION TO THE 'BATTERED WIFE SYNDROME' AND THE 'BATTERED WOMAN SYNDROME':

"(1) THAT THE SYNDROMES CURRENTLY ARE MATTERS OF COMMONLY ACCEPTED SCIENTIFIC KNOWLEDGE;

"(2) THAT THE SUBJECT MATTER AND DETAILS OF THE SYNDROMES ARE NOT WITHIN THE GENERAL UNDERSTANDING OR EXPERIENCE OF A PERSON WHO IS A MEMBER OF THE GENERAL POPULACE AND ARE NOT WITHIN THE FIELD OF COMMON KNOWLEDGE.

"(*B*) IF A PERSON IS CHARGED WITH AN OFFENSE INVOLVING THE USE OF FORCE AGAINST ANOTHER AND THE PERSON, AS A DEFENSE TO THE OFFENSE CHARGED, RAISES THE AFFIRMATIVE DEFENSE OF SELF-DEFENSE, THE PERSON MAY INTRODUCE EXPERT TESTIMONY OF THE 'BATTERED WIFE SYNDROME'

Of course, a defendant attempting to admit expert testimony regarding the battered woman syndrome must offer evidence which establishes herself as a "battered woman."

Accordingly, we overrule *State* v. *Thomas, supra* (66 Ohio St. 2d 518), to the extent that it holds that expert testimony concerning the battered women syndrome may not be admitted to support the affirmative defense of self-defense. Where the evidence establishes that a woman is a battered woman, and when an expert is qualified to testify about the battered woman syndrome, expert testimony concerning the syndrome may be admitted to assist the trier of fact in determining whether the defendant acted in self-defense.

Appellant further argues that the trial court erred in refusing her request to charge the jury on negligent homicide. The record shows that the trial court instructed the jury on murder, the offense with which appellant was charged; voluntary manslaughter; and self-defense. Crim. R. 31(C) states in part: "* * * When the indictment, information, or complaint charges an offense including degrees, or if lesser offenses are included within the offense charged, the defendant may be found not guilty of the degree charged but guilty of an inferior degree thereof, or of a lesser included offense." See, also, R.C. 2945.74.

This court in *State* v. *Deem* (1988), 40 Ohio St. 3d 205, 533 N.E. 2d 294, at paragraph three of the syllabus, set forth a three-part test to determine when an offense may be a lesser included offense of another offense:

"An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense. (*State* v. *Kidder* [1987], 32 Ohio St. 3d 279, 513 N.E. 2d 311, modified)." However, "[e]ven though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. (*State* v. *Kidder* [1987], 32 Ohio St. 3d 279, 513 N.E. 2d 311; *State* v. *Davis* [1983], 6 Ohio St. 3d 91, 6 OBR 131, 451 N.E. 2d 772; *State* v. *Wilkins* [1980], 64 Ohio St. 2d 382, 18 O.O. 3d 528, 415 N.E. 2d 303, clarified.)" *State* v. *Thomas* (1988), 40 Ohio St. 3d 213, 533 N.E. 2d 286, paragraph two of the syllabus.

Thus, the facts and evidence of a particular case become pertinent only after the court first finds that the offense indeed is a lesser included offense. "[O]ur longstanding rule [is]

OR THE 'BATTERED WOMAN SYNDROME,' OR BOTH, AND EXPERT TESTIMONY THAT THE PERSON SUFFERED FROM EITHER SYNDROME OR BOTH SYNDROMES, AS EVIDENCE TO ESTABLISH THE REQUISITE BELIEF OF AN IMMINENT DANGER OF DEATH OR GREAT BODILY HARM THAT IS NECESSARY, AS AN ELEMENT OF THE AFFIRMATIVE DEFENSE, TO JUSTIFY THE PERSON'S USE OF THE FORCE IN QUESTION. THE INTRODUCTION OF AN EXPERT'S TESTIMONY UNDER THIS DIVISION SHALL BE IN ACCORDANCE WITH THE *OHIO RULES OF EVIDENCE*."

that the evidence presented in a particular case is irrelevant to the determination of whether an offense, as statutorily defined, is necessarily included in a greater offense. The facts become relevant only in the determination of whether a jury could reasonably convict the defendant of the lesser included offense as defined." *Kidder, supra,* at 282, 513 N.E. 2d at 315.

The two offenses at issue here are R.C. 2903.02 and 2903.05. "Murder" is defined in R.C. 2903.02 as:

"(A) No person shall purposely cause the death of another.

"(B) Whoever violates this section is guilty of murder, and shall be punished as provided in section 2929.02 of the Revised Code."

"Negligent homicide," R.C. 2903.05, is defined as:

"(A) No person shall negligently cause the death of another by means of a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code.

"(B) Whoever violates this section is guilty of negligent homicide, a misdemeanor of the first degree."

The first prong of the test is met because negligent homicide carries a lesser penalty than murder. However, the second prong of the test is not met because one can purposely cause the death of another by means other than by a deadly weapon or dangerous ordnance. Therefore, because negligent homicide is not always and "necessarily included in" murder, we hold that negligent homicide is not a lesser included offense of murder. The trial court, therefore, properly refused to instruct on negligent homicide as a lesser included offense of murder. See *Thomas, supra* (40 Ohio St. 3d 213), at 215, 533 N.E. 2d at 288-289.

In her third proposition of law, appellant argues that she is entitled to an acquittal because the jury's verdict is inherently inconsistent. The jury found her guilty of voluntary manslaughter but not guilty of the gun specification. Accordingly, she contends that the verdict is inconsistent in view of the evidence.

The record clearly establishes that the victim died of a gunshot wound to the head. Appellant testified at trial that she remembers observing the gun on the nightstand and reaching for it. Although she stated that she "must have picked" up the gun, she does not remember firing it. The gun was not positively identified as the murder weapon, but the bullets remaining in the gun were similar to the type of bullet used to kill the victim.

In view of the evidence which demonstrates that the victim died of a gunshot wound, we must find that the jury's verdict that appellant was guilty of voluntary manslaughter but not guilty of having "a firearm on or about her person or under her control while committing the offense" is inconsistent. The jury not having found appellant guilty of the gun specification, the prosecution will not be permitted to retry her on the specification upon remand.

Lastly, appellant argues that the trial court erred in determining that her sentence was non-probationable. The controlling statute, then effective, is R.C. 2951.02(F)(3), which provides:

"An offender shall not be placed on probation or otherwise have his sentence of imprisonment suspended pursuant to division (D)(2) or (4) of section 2929.51 of the Revised Code when any of the following applies:

"* * *

"(3) The offense involved was not a violation of section 2923.12 of the Revised Code and was committed while the offender was armed with a firearm or dangerous ordnance, as

defined in section R.C. 2923.11 of the Revised Code."

Although the jury acquitted appellant of the gun specification, the evidence establishes that the victim died of a gunshot wound to the head. The jury also found that appellant caused the death of the victim and found her guilty of voluntary manslaughter. Thus, the trial court properly determined that probation was not appropriate because the offense was committed with a firearm. See *State* v. *Fisher* (1985), 26 Ohio App. 3d 197, 198, 26 OBR 418, 419, 499 N.E. 2d 344, 346 (trial court correctly determined that the offense was non-probationable where the presentence investigation disclosed that a firearm was involved in the commission of the crime charged).

For the foregoing reasons, the judgment of the court of appeals is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

MOYER, C.J., SWEENEY and HOLMES, JJ., concur in the syllabus and judgment.

HOLMES, J., concurring in syllabus and judgment. I concurred in the syllabus and judgment in *State* v. *Thomas* (1981), 66 Ohio St. 2d 518, 20 O.O. 3d 424, 423 N.E. 2d 137, in which a unanimous court denied expert testimony on the so-called "battered wife syndrome" or "battered woman syndrome." As clearly set forth in the syllabus of *Thomas,* there were four bases for our decision that such testimony was inadmissible. Today, the majority overrules only the third such enumerated basis, and I join in the majority's holding "that the battered woman syndrome has gained substantial scientific acceptance to warrant admissibility in evidence."

I write separately, however, to emphasize that the other limitations enumerated in *Thomas* on the admissibility of this type of testimony still remain. Of especial importance to the case before us, general expert testimony as to this "syndrome" should be admitted *only* in connection with testimony of a clinical psychiatrist or psychologist who has in fact examined the defendant, which states that the defendant herself was a battered woman. Expert testimony regarding battered women in general or concerning only the syndrome itself would be wholly "irrelevant and immaterial to the issue of whether defendant acted in self-defense at the time of the shooting." *Thomas, supra,* at syllabus.[3] The record before us here indicates that defendant's proffer was limited to expert testimony regarding the two components of the syndrome

---

[3] See, *e.g., State* v. *Anaya* (Me. 1981), 438 A. 2d 892 (expert testimony relevant to defendant's behavior and perception at time of killing because testimony gave the jury reason to believe that defendant's conduct was consistent with self-defense); *State* v. *Kelly* (1984), 97 N.J. 178, 478 A. 2d 364 (expert testimony relevant to objective reasonableness and honesty of defendant's belief that deadly force was necessary);

*State* v. *Allery* (1984), 101 Wash. 2d 591, 682 P. 2d 312 (admitting expert testimony to explain why a battered woman remains in an abusive relationship and why defendant perceived herself in imminent danger at time of shooting). See, also, *Smith* v. *State* (1981), 247 Ga. 612, 277 S.E. 2d 678 (admitting expert evidence regarding battered women in general).

itself. No proffer was made of expert testimony that defendant Koss was herself a battered woman, or that the syndrome was in any way relevant to defendant's conduct in the killing of her husband.[4]

I also wish to stress the point made in paragraph three of the syllabus of today's decision, which point goes both to relevance of expert testimony in a given case, as well as to whether the prejudicial impact of admitting such testimony outweighs its probative value. The battered woman syndrome we recognize today does not establish a new defense to or justification for the killing of an abusive husband or lover. The battered woman syndrome is not a defense in itself, and does not — standing alone — excuse the defendant. *State* v. *Kelly* (1982), 33 Wash. App. 541, 655 P. 2d 1202, reversed on other grounds (1984), 102 Wash. 2d 188, 685 P. 2d 564; *State* v. *Leidholm* (N.D. 1983), 334 N.W. 2d 811.

"Most battered woman's defense cases involve situations in which the defendant was not, in fact, in imminent danger of death or serious bodily harm at her victim's hands. The defense relies on persuading the jury that defendant suffered from an identifiable psychological syndrome that caused her to assess the dangerousness of the situation in a different manner than an average, ordinary person — including a woman who does not suffer from battered woman syndrome. In other words, acquittal is dependent upon proving that defendant had * * * a disability that caused a mistaken, but reasonable, belief in the existence of circumstances that would justify self-defense. *It is a theory of excuse rather than of justification.* Because defendant responded to internal and external coercive pressures, for which she was not responsible but which were created by her social reality as a battered woman, she is not to blame for her conduct. A person who did not suffer from battered woman syndrome, however, would be culpable under identical external circumstances. * * *" (Emphasis added; footnotes omitted.) Rosen, The Excuse of Self-Defense: Correcting A Historical Accident On Behalf Of Battered Women Who Kill (1986), 36 Amer. U.L. Rev. 11, 43. The grave danger, in my view, posed by stating that a battered woman who kills her abuser is *justified* in doing so is that such conduct may be in some manner encouraged. *Id.* at 44.

I would also caution trial courts to carefully weigh the prejudicial impact of such expert testimony, pursuant to Evid. R. 403(B), in cases where its relevance is less than clear. A real danger for abuse exists, in my view, in that the battered woman syndrome may be used to divert the jury's attention to the prior bad acts and alleged bad character of the "battering husband."

"In defining the defendant as a battered woman, the expert would necessarily identify the deceased as a battering husband and highlight the years of abuse which the accused suffered at her spouse's hands. Both the character and the conduct of the deceased would be described, interpreted, and defined through the vehicle of scientific testimony. The jury's attention would in this manner be deflected from the *responses* of the ac-

---

[4] See *Buhrle* v. *State* (Wyo. 1981), 627 P. 2d 1374 (excluding expert testimony because, *inter alia*, defendant's behavior did not fit into pattern of battered woman syndrome).

222

*cused* at the *time of the homicide* to the general bad character and repeated acts of misconduct *of the deceased* at times *far removed* from the homicide. Imbued with the 'aura of infallibility' typically ascribed to expert witnesses, and benefiting from the tendency of scientific testimony to be exceptionally persuasive, the effect of the expert's testimony could thus be to enhance the relevance of conclusions that are not germane to a claim of lawful justification." (Footnote omitted.) Acker & Toch, Battered Women, Straw Men, and Expert Testimony: A Comment on *State* v. *Kelly* (1985), 21 Crim. L. Bull. 125, 146-147.

I have considerable empathy with those women who are physically abused by their husbands or the men in their lives, and this court should extend to them every reasonable opportunity to present every legal defense available within the realm of our evidentiary process. Thus, with the aforestated caveats, I am able to concur in today's syllabus and judgment.

MOYER, C.J., and SWEENEY, J., concur in the foregoing opinion.