The STATE of Ohio, Appellee,

v.

DONNER, Appellant.

[Cite as *State v. Donner* (1994), 96 Ohio App.3d 486.]

Court of Appeals of Ohio,
Lorain County.

Nos. 93CA005648, 93CA005676.

Decided Aug. 24, 1994.

*Gregory A. White,* Lorain County Prosecuting Attorney, and *Robert F. Corts,* Assistant Prosecuting Attorney, for appellee.

*Jack W. Bradley,* for appellant.

DICKINSON, Judge.

Defendant Jean R. Donner has appealed from the denial of her motion to withdraw her guilty plea to a charge of attempted murder with a firearm specification. She has argued that the trial court incorrectly denied her motion to withdraw because (1) she established that she had a valid defense to the charge against her; (2) she established that she had entered her guilty plea in reliance upon erroneous advice provided her by her counsel; and (3) permitting her to withdraw her guilty plea would not have unduly burdened the trial court or the prosecutor. This court affirms the trial court's denial of defendant's motion to withdraw her guilty plea because that denial was not an abuse of discretion and

because a conclusion that defendant voluntarily and intelligently entered her plea was not against the manifest weight of the evidence.

## I

On May 28, 1992, defendant shot her husband. She was indicted for attempted murder and felonious assault on July 15, 1992. Each charge included a firearm specification. Following several continuances, her trial was scheduled to commence before the Lorain County Court of Common Pleas on April 13, 1993. On that day, pursuant to a plea agreement with the prosecutor, she pleaded guilty to the charge of attempted murder with a firearm specification. The felonious assault charge was dismissed and the prosecutor recommended that she be given the minimum sentence on the attempted murder charge.

Following her guilty plea, defendant changed counsel. On May 14, 1993, she moved to withdraw her guilty plea. The trial court held a hearing on that motion on June 14, 1993.

At that hearing, defendant testified that she had wanted to go to trial on the charges against her because she believed she was a battered woman. She testified that she had pleaded guilty, however, because her former attorney had told her that "it would be better if I [took] the plea, because he had no defense, even though he knew that I was a battered woman."

She presented evidence and a proffer that her husband had physically abused her on at least two occasions prior to the day she shot him and that, despite that abuse, she had remained in the relationship. She testified that she had spoken to her husband over the telephone from her place of employment on the morning of the day of the shooting. According to her, they had quarreled because she had confronted him with evidence she had found that he was involved with another woman. He had allegedly told her that, when she got home, her "F——ing ass has had it." She testified that she immediately left work and, when she got home, he punched her in the chest. She then picked up a gun and shot him four times.

Defendant did not call her former attorney as a witness. She did, however, present testimony from an associate of her former attorney who had assisted him in handling her case. The associate testified that defendant had been evaluated by a psychiatrist who was an expert on the battered woman syndrome. Although, as noted above, there was evidence that defendant had been abused by her husband on at least two occasions and had remained in the relationship, the psychiatrist concluded that defendant had not shot her husband because she was suffering from the battered woman syndrome. Her former attorney did not intend to call the psychiatrist at trial because he believed the prosecutor would

elicit testimony from her that would be damaging to defendant. He did intend, however, to proffer expert testimony regarding the battered woman syndrome from another witness, an advocate for a battered women's shelter. According to defendant, once her attorney determined that the psychiatrist who had evaluated her did not believe that she shot her husband because she suffered from the battered woman syndrome, "he had me go to another one until I found one that would agree to his terms."

The trial court denied defendant's motion to withdraw her plea on June 16, 1993, holding that there was not "a reasonable or legitimate basis for withdraw of the guilty plea." It sentenced her to five to twenty-five years on the attempted murder charge and three years on the gun specification. She timely appealed the trial court's denial of her motion to this court.

## II

In *State v. Xie* (1992), 62 Ohio St.3d 521, 584 N.E.2d 715, the Ohio Supreme Court considered a case in which a defendant moved to withdraw a guilty plea prior to the time the trial court had sentenced him. He argued that he had pleaded guilty to a lesser included offense because he had been misled by incorrect information his attorney had provided him regarding when he would be potentially eligible for parole if he was convicted of the principal charge against him. The trial court denied his motion to withdraw. The court of appeals, however, reversed, finding that the defendant's reliance upon the incorrect information provided him by his counsel rendered his guilty plea unintelligent and involuntary.

The Ohio Supreme Court considered three potential bases for permitting a defendant to withdraw his or her guilty plea prior to sentencing: (1) ineffective assistance of counsel; (2) Crim.R. 32.1; and (3) the requirement that a guilty plea be entered intelligently and voluntarily. It concluded that the defendant in *Xie* was not entitled to withdraw his guilty plea on any of these bases and reversed the judgment of the court of appeals. *Id.* at 528, 584 N.E.2d at 720.

In this case, defendant has not contended that her former counsel was ineffective. It is necessary to determine, therefore, whether the trial court was required to grant defendant's motion to withdraw in this case based upon either Crim.R. 32.1 or the requirement that a guilty plea be intelligently and voluntarily entered.

490

A

Crim.R. 32.1 provides:

"A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

An appellate court called upon to review a denial of a presentence motion to withdraw a guilty plea must determine whether that denial constituted an abuse of the trial court's discretion:

"[A] defendant does not have an absolute right to withdraw a plea prior to sentencing. Therefore, the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *State v. Xie, supra,* 62 Ohio St.3d at 527, 584 N.E.2d at 719.

As noted previously, the trial court did conduct a hearing on defendant's motion in this case. Accordingly, this court must determine whether, based upon the evidence presented at that hearing, the trial court's denial of defendant's motion to withdraw was an abuse of discretion.

1

Defendant has argued that she established at the hearing on her motion to withdraw that she had a valid defense to the charges against her. Specifically, she has argued that, inasmuch as she would have been able to present evidence at trial that she had been abused by her husband on two occasions prior to the day on which she shot him and had remained in the relationship, she was a battered woman and would have been able to defend the charges against her on that basis.

In *State v. Koss* (1990), 49 Ohio St.3d 213, 551 N.E.2d 970, the Ohio Supreme Court determined that the battered woman syndrome has gained sufficient scientific acceptance to permit evidence regarding it to be admissible in a criminal proceeding:

"Where the evidence establishes that a woman is a battered woman, and when an expert is qualified to testify about the battered woman syndrome, expert testimony concerning the syndrome may be admitted to assist the trier of fact in determining whether the defendant acted in self-defense." *Id.* at 218, 551 N.E.2d at 975.

The Supreme Court emphasized that "[o]f course, a defendant attempting to admit expert testimony regarding the battered woman syndrome must offer evidence which establishes herself as a 'battered woman.'" *Id.* Although it did not specifically state what evidence is necessary to establish that a defendant is a "battered woman," it did quote the following language from *State v. Kelly* (1984), 97 N.J. 178, 193, 478 A.2d 364, 371:

"[I]n order to be classified as a battered woman, the couple must go through the battering cycle at least twice. Any woman may find herself in an abusive relationship with a man once. If it occurs a second time, and she remains in the situation, she is defined as a battered woman." *Koss*, 49 Ohio St.3d at 216–217, 551 N.E.2d at 973–974.

Being a "battered woman," in the sense of having been abused twice and having remained in the relationship, is not synonymous with suffering from the battered woman syndrome. There are a number of factors relevant to a determination that a particular defendant suffers from the battered woman syndrome. See *State v. Daws* (July 27, 1994), Montgomery App. No. 13914, unreported, at 29, 1994 WL 390180. Further, as specifically noted by the Ohio Supreme Court in *Koss*, suffering from the battered woman syndrome is not, in and of itself, a defense to an alleged crime. Rather, it is relevant to an attempt by the defendant to establish that she acted in self-defense:

"[A]dmission of expert testimony regarding the battered woman syndrome does not establish a new defense or justification. Rather, it is to assist the trier of fact in determining whether the defendant acted out of an honest belief that she was in imminent danger of death or great bodily harm and that the use of such force was her only means of escape." *Koss*, 49 Ohio St.3d at 217, 551 N.E.2d at 974.

Defendant did present evidence at the hearing on her motion to withdraw, through testimony and a proffer, that she was a battered woman in the sense that she had been abused at least twice before the day she shot her husband and had stayed in the relationship. Further, she testified that she was "scared to death of [her husband] all the time" and that she left work and went home on the day she shot him because she was "scared to death." She did not, however, proffer any expert testimony that she suffered from the battered woman syndrome. Nor did she testify that by "being scared to death," she meant that she believed "she was in imminent danger of death or great bodily harm and that the use of force was her only means of escape." Absent such expert testimony and belief, defendant would not have been successful in establishing that she shot her husband in self-defense based upon the battered woman syndrome.

## 2

■ Defendant's second argument flows from her first argument. She has asserted that she pleaded guilty based upon her former attorney's erroneous advice that she did not have a defense to the charges against her. Defendant testified that she pleaded guilty because her former attorney told her that "he had no defense, even though he knew that [she] was a battered woman." As discussed above, it is by no means clear that defendant would have been able to

establish that she shot her husband in self-defense based upon the battered woman syndrome. Accordingly, if her former attorney told her she had no defense to the charges against her, that advice may not have been incorrect. Further, it is possible that the trial court denied defendant's motion to vacate her plea because it found her testimony about what her former attorney allegedly told her not credible.

There was evidence that defendant's former attorney intended to present evidence regarding the battered woman syndrome. Defendant's former attorney's associate testified that she did not believe defendant was told that she did not have a defense:

"I don't believe I told her that. We told her the results of the evaluation that [the psychiatrist] had done; and that [the psychiatrist] was unwilling to testify in her behalf."

The associate further testified that defendant's former attorney was prepared to offer the testimony of an advocate for a battered woman's shelter regarding the battered woman syndrome. The associate's testimony was supported by defendant's own testimony that, when the psychiatrist concluded that defendant did not suffer from the battered woman syndrome, her former attorney sent her to speak to someone else who would "agree to his terms."[1]

Perhaps the trial court believed that, instead of telling defendant she had no defense, her former attorney told her that she did not have a defense that was likely to be successful. As discussed previously, defendant failed to testify at the hearing on her motion to withdraw that, at the time she shot her husband, she believed "she was in imminent danger of death or great bodily harm and that the use of force was her only means of escape." Further, such advice would have been supported by the fact that the psychiatrist who evaluated defendant was an expert on battered woman syndrome and had concluded that she was not suffering from it. It would have also been reasonable advice based upon a recognition that, at trial, the prosecutor would have been able to argue convincingly that defendant shot her husband because she was angry that he was involved with another woman rather than in self-defense because she was a battered woman in fear for her life. Defendant conceded at the hearing on her motion to withdraw that she was jealous of her husband's alleged relationship with another woman, saying, "Oh, I think I have a right to be." In addition, defendant's daughter confirmed at the hearing that she had told a police detective

---

1. Defendant's counsel has suggested that her former counsel had not notified the prosecutor prior to trial that he intended to offer evidence regarding the battered woman syndrome and, therefore, "had no intention of introducing testimony regarding [defendant] being a battered woman * * *." That alleged failure, however, did not necessarily outweigh the evidence that he did intend to attempt to offer such testimony from the battered woman's shelter advocate.

that her mother was a "jealous person" and that her mother fought back in altercations with her father:

"Q. Do you recall telling Detective Thomas that your mother fights back just as much as your father fights?

"A. She fights back, yeah.

"Q. Or I'm—her mother—Charlene stated that her mother was not a person to be battered. Mother fights back and doesn't give in at all; that she would not classify her as a battered woman.

"Do you recall talking to Detective Thomas about that?

"A. Yes, I do, but I don't even know what a battered woman is myself."

■ · Even if it were clear that defendant had a defense to the charges against her and that her former attorney erroneously advised her that she did not, it would still have been within the discretion of the trial court to deny her motion to withdraw her plea if it determined that her former attorney's erroneous advice was not the determining factor in her decision to plead guilty. In *State v. Xie*, *supra*, 62 Ohio St.3d at 527, 584 N.E.2d at 719–720, the Ohio Supreme Court held that the trial court did not abuse its discretion in denying the defendant's motion to vacate in that case although he had clearly been provided incorrect advice:

"[T]he trial court carefully weighed [the] very points [argued by the defendant on appeal], and refused to permit [him] to withdraw the plea. It is not the role of an appellate court to conduct a *de novo* review of a trial court's decision in these circumstances."

In this case, the trial court held a hearing and carefully weighed defendant's arguments. It is not within the province of this court to conduct a *de novo* review of the trial court's decision.

### 3

■ Defendant's final argument is that permitting her to withdraw her guilty plea would not have unduly burdened the trial court or the prosecutor. Defendant entered her guilty plea on the morning that her trial had been scheduled to commence. Presumably, the prosecutor had spent time preparing for defendant's trial and had arranged for the presence of witnesses necessary for the presentation of evidence against her. Permitting defendant to withdraw her guilty plea would have burdened the prosecutor to the extent of requiring him to prepare for trial a second time. Further, the trial court would have been burdened to the extent of having to again set aside time for defendant's trial. Such a burden on the prosecutor and the trial court is not so heavy that a guilty plea entered on the morning of trial could never be withdrawn, but based upon the facts of this case, that burden would not be so slight that the trial court's denial was an abuse of discretion.

In this case, the trial court's denial of defendant's motion to withdraw her guilty plea was not unreasonable, arbitrary, or unconscionable. Accordingly, that denial was not an abuse of discretion.

## B

■ As noted previously, a second potential basis for withdrawal of a presentence guilty plea is that it was not voluntarily and intelligently entered. Defendant has not suggested that the trial court failed to fully comply with the requirements of Crim.R. 11 at the time it accepted her guilty plea. As discussed previously, the trial court in this case may well have concluded that defendant's former attorney did not tell her that she had no defense to the charges against her or, if he did, that his statement was not incorrect. In addition, the trial court may have concluded that defendant's former attorney's allegedly incorrect advice was not such an important factor in her decision to plead guilty that it rendered her plea involuntary and unintelligent. This court cannot conclude that the trial court erred in refusing to permit defendant to withdraw her guilty plea on the ground that it was not voluntarily and intelligently entered.

## III

Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and REECE, J., concur.