OPINION
Defendant-appellant, Barbara Y. Palmer, appeals from her conviction of involuntary manslaughter. Appellant contends that she was deprived of effective assistance of trial counsel and that her conviction was against the manifest weight of the evidence. We find neither of appellant's contentions persuasive and affirm her conviction.
On October 10, 1997, appellant was indicted on one count of murder. The charge related to an October 4, 1997 incident in which appellant stabbed her husband, Charles Palmer, with a kitchen knife. Mr. Palmer died later that night at the hospital. A jury trial commenced on November 10, 1998.
At trial, appellant admitted that she stabbed her husband but claimed that she did so in self-defense. In particular, appellant testified that, on the night in question, she was home while her husband was out drinking with friends. At approximately 9:00 p.m., her husband called home looking for a money order that he had given her earlier in the day. At that time, he threatened to kick appellant's ass if she did not give the money order to him when he returned home. Later that night, appellant was in her bedroom when her husband returned home drunk. Looking for the money order, he pulled a drawer from a dresser and slammed it down, causing its contents to spill on the floor. He then grabbed appellant's neck and starting beating her. According to appellant, she sought refuge in the bedroom closet, but her husband pulled her out of the closet and continued to punch her in her head. Afraid for her safety and in order to defend herself from her husband's attack, she found the knife, which previously had been left in the bedroom, and stabbed her husband. In her defense, appellant also presented evidence that she suffered from Lupus, a disease which likely impaired her ability to properly process information, especially in stressful situations.
The jury was instructed on murder, voluntary manslaughter, involuntary manslaughter, and self-defense. On November 23, 1998, the jury found defendant not guilty of murder and not guilty of voluntary manslaughter, but found defendant guilty of involuntary manslaughter. By judgment entry filed January 21, 1999, the court sentenced appellant to four years of imprisonment. It is from this judgment entry that appellant appeals, raising the following two assignments of error:
First Assignment of Error
Appellant was deprived of effective assistance of counsel.
Second Assignment of Error
 The trial court committed reversible error and deprived Appellant of due process of law by entering judgment of conviction that was contrary to the manifest weight of the evidence.
In her first assignment of error, appellant contends that she is entitled to a new trial because she was deprived of her right to effective assistance of trial counsel according to the standards set forth in Strickland v. Washington (1984),466 U.S. 668. In general, appellant argues that her trial counsel pursued an inconsistent and confusing trial strategy. In particular, appellant contends that despite raising the theory of battered woman syndrome with the jury during voire dire and despite having Ms. Mary Jeffery-Stevens, a licensed professional counselor and licensed independent social worker, qualified to testify as an expert on appellant's behalf, appellant's trial counsel never called Ms. Jeffery-Stevens to testify about the battered woman syndrome or to opine that appellant suffered from it.[1] Appellant contends that in so doing, her trial counsel violated one of the fundamental rules of trial advocacy — making a promise that he did not or could not keep. According to appellant, trial counsel never should have raised expectations with the jury about battered woman syndrome or, having raised such expectations, should have delivered evidence to support it.
In order to prevail on his claim of ineffective assistance of counsel under Strickland, appellant must show that "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." State v. Reynolds (1998), 80 Ohio St.3d 670, 674. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. Strickland, supra, at 686. Thus, a two-part test is necessary to examine such claims. First, appellant must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably.State v. Keith (1997), 79 Ohio St.3d 514, 534. Second, appellant must show that, but for the counsel's errors, there is a reasonable probability that the results of the trial would be different. Id. "A reasonable probability is a probability sufficient to undermine the confidence in the outcome." State v.Carpenter (1996), 116 Ohio App.3d 615, 622.
The burden of showing ineffective assistance of counsel is on the defendant. State v. Smith (1985), 17 Ohio St.3d 98. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998), 81 Ohio St.3d 673, 675. Tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance of counsel. State v. Carter (1995), 72 Ohio St.3d 545, 558
("[j]udicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel");Carpenter, supra, at 626 (court of appeals is to "presume that a broad range of choices, perhaps even disastrous ones, are made on the basis of tactical decisions and do not constitute ineffective assistance"). Applying these standards, we find that appellant has failed to show that her counsel was ineffective.
First, appellant overstates the nature and import of her trial counsel's comments to the jury regarding battered woman syndrome. Contrary to appellant's suggestion in her brief, trial counsel did not make any promises that battered woman syndrome would be raised on behalf of appellant at trial. Significantly, appellant's trial counsel made no reference to the theory during opening arguments. Rather, trial counsel mentioned the theory only during voire dire of the jury and limited his comments to inquiries as to the prospective jurors' knowledge and/or personal experience with it. Furthermore, trial counsel's inquiries as to battered woman syndrome were made in context of counsel's inquiries into the juror's knowledge of and experience with several other conditions, including alcoholism, stroke, dementia, Alzheimer's disease, and Lupus. Finally, given the early stage of the trial, trial counsel's inquiry about the juror's knowledge and/or potential receptiveness to such a theory was appropriate as long as it was possible that battered woman syndrome might (but not necessarily) be used at trial.
Second, we find that presentation of expert testimony that appellant suffered from battered woman syndrome was unnecessary given appellant's testimony that she stabbed her husband to defend against his violent physical assault on her. Evidence concerning battered woman syndrome in general and evidence the appellant suffered from that syndrome in particular is pertinent only as it contributes to the appellant's state of mind at the time the killing occurred, i.e., that it contributed to the appellant's perception of being in imminent danger of severe bodily harm or death at the hands of her partner. State v.Koss (1990), 49 Ohio St.3d 213, 217 (recognizing the admissibility of testimony on battered woman syndrome as going to a defendant's claim of self-defense); see, also, State v. Daws (1994),104 Ohio App.3d 448; see, generally, R.C. 2901.06(B) ("the person [who asserts self-defense] may introduce expert testimony of the `battered woman syndrome' and expert testimony that the person suffered from that syndrome as evidence to establish the requisite belief of an imminent danger of death or great bodily harm that is necessary, as an element of the affirmative defense [of self-defense]"). Thus, "where the accused claims self-defense, expert evidence concerning battered woman syndrome is most often necessary and provides the greatest assistance to a jury, in those situations where the facts of the case indicate that the average, reasonable person not suffering from the syndrome, would not have believed the danger of death or great bodily harm was imminent." Sallie,supra, at 675 (citing Koss, at 221 [Holmes, J., concurring]).
However, as recently noted by the Ohio Supreme Court inSallie, supra, when a defendant testifies that she killed her partner to protect against a pending physical attack by that partner, the reasonableness of defendant's belief that she is in imminent danger of death or great bodily harm is generally not in question. Sallie, supra, at 676 (considering defendant's testimony that her boyfriend was physically attacking her and threatening to kill her, "expert testimony on battered woman syndrome was unnecessary to show an honest belief in the imminent danger of death or great bodily harm"). Rather, the question for the jury is whether the defendant is telling the truth. Id. As stated by the Ohio Supreme Court in Sallie:
 The real issue in [defendant's] case was not whether she suffered from battered woman syndrome, but whether [defendant's] version of the facts was credible. If the jury believed events occurred as [defendant] claims, it could have properly determined she reasonably believed she was in imminent danger of death or great bodily harm and thus acted in self-defense.
 On the facts as [defendant] related them, the jury could make the determination [defendant] acted in self-defense regardless of whether [the decedent] had previously abused her, or whether the night [the decedent] was killed was the first time he attacked [the defendant]. *** [Id. at 676.]
Thus, in such cases, trial counsel is not ineffective for failing to present expert testimony as to battered woman syndrome. Seeid.
Here, appellant testified that, on the night in question, her husband threatened her over the phone, physically attacked her, grabbed her by the neck, pulled her out of a closet in which she attempted to hide, and continued to punch her in the head. Appellant further testified that she was certain that appellant intended to hurt her and that she feared for her safety. Thus, appellant's testimony, if believed, showed that she reasonably believed she was in imminent danger of death or great bodily injury because she was in fact in such danger. As such, expert testimony on battered woman syndrome was unnecessary to support her claim of self-defense, and the introduction of such evidence may have simply confused the jury or diluted an otherwise straightforward self-defense claim.
Finally, the record indicates that appellant's trial counsel may have had other strategic reasons for not calling Jeffery-Stevens to testify about battered woman syndrome during the trial. During the cross-examination of appellant, the prosecuting attorney questioned appellant about possible contradictory or otherwise damaging statements that appellant may have made to Jeffrey-Stevens during one or more of their consultations. In fact, after appellant's trial counsel chose not to call Jeffery-Stevens as a witness, the prosecuting attorney unsuccessfully sought to call her on rebuttal for purposes of inquiring into possible prior statements that appellant might have made that were inconsistent with appellant's trial testimony. Moreover, the record indicates that the basis for Jeffery-Stevens' opinion that appellant suffered from battered woman syndrome would have been effectively undermined if offered during the trial. During the voire dire of Jeffery-Stevens before trial, the prosecuting attorney effectively noted that Jeffery-Stevens is not a psychiatrist or a psychologist and had no formal training in battered woman syndrome. Moreover, when asked on cross-examination by the prosecuting attorney, Jeffery-Stevens also appeared unfamiliar with specific studies and/or diagnostic tools developed by specialists in battered woman syndrome. Simply put, it was reasonable for trial counsel to conclude that calling Jeffery-Stevens to the stand may have resulted in more harm than good.
For the foregoing reasons, we find that appellant has failed to show that her trial counsel was ineffective under theStrickland test. As a result, appellant's first assignment of error is not well-taken.
In her second assignment of error, appellant contends that her conviction was against the manifest weight of the evidence. In particular, appellant contends that the great weight of the evidence established that she acted in self-defense.
Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence. State v. Thompkins (1997), 78 Ohio St.3d 380,387. In so doing, the court of appeals sits as a "thirteenth juror" and after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id. (quoting State v. Martin
[1983], 20 Ohio App.3d 172, 175); see, also, Columbus v. Henry
(1995), 105 Ohio App.3d 545, 547-548. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins,supra, at 387.
Here, appellant had the burden to prove self-defense and the evidence was not so one-sided as to support appellant's claim. While appellant's testimony, if believed by the jury, established self-defense, there were legitimate reasons why the jury might have disbelieved appellant's testimony. First, appellant was the only person who testified as to the alleged attack by her husband. Appellant's daughter, Leslie, who, according to appellant's testimony, entered the bedroom during the attack and was present when appellant stabbed her husband, did not corroborate appellant's story. Rather, Leslie testified that she was asleep in the house during the incident and did not awaken until appellant stabbed her husband. Likewise, the photograph of appellant taken on the night of the incident fails to indicate the type of injury one might expect given appellant's testimony that her husband repeatedly punched her in the head. Finally, the presence of a kitchen knife in the bedroom was never convincingly explained.
Given the controverted nature of appellant's testimony, we can not find that the jury clearly lost its way in rejecting appellant's self-defense claim. As such, we find appellant's second assignment of error not well-taken.
For the foregoing reasons, appellant's first and second assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
KENNEDY and PETREE, JJ., concur.
[1] Appellant's first assignment of error refers to both battered woman syndrome and the more general theory of post-traumatic stress disorder. According to Ms. Jeffery-Stevens' testimony during voire dire, battered woman syndrome is not a clinical diagnosis separate and distinct from post-traumatic stress disorder. For purposes of simplicity, we refer only to battered woman syndrome in the body of this opinion.