JOURNAL ENTRY AND OPINION
Defendant-appellant Michael Socha appeals from his jury conviction for murder. Defendant was indicted for aggravated murder and aggravated robbery. Before trial, the trial court granted the prosecution's motion to amend the charges to murder and aggravated robbery.
Defendant's sister had been married to the victim until she died of cancer in 1993. Defendant and the victim ultimately became involved in probate court litigation concerning her estate. The litigation included allegations that the victim was not legally divorced from his prior wife before his marriage to defendant's sister, Lucy. In the probate litigation, the victim was claiming property as her spouse, whereas defendant was seeking to claim the property under his sister's will as if she had never been married to the victim. Defendant and the victim settled the litigation in February 16, 1999, six weeks before the murder on April 30, 1999.
The prosecution presented testimony from eighteen witnesses. The prosecution's theory was that defendant struck the smaller and older victim, who was 78 years of age and weighed only 134 pounds, in the head 13 times with a hammer. Deputy coroner McCollum performed an autopsy on the victim. She testified that the victim died of injuries resulting from blows to his skull and brain. Each blow was of sufficient force to have caused his death. He had defense wounds on his body. She also noted that the victim had consumed approximately seven drinks of alcohol within one to three hours of his death.
Debra Nelson testified that on April 30, 1999 at approximately 6:00 p.m. she was riding her horse in the Metroparks' Rocky River Reservation. She observed defendant and his pickup truck. As she approached, she saw him dump a body in the woods. She galloped back to the stables and directed someone to call the police.
Several Metropark Rangers and Cleveland police officers testified concerning their response to the emergency call. Rangers Oergel and then Dickey responded to the scene. Oergel obtained the license plate number of defendant's pickup truck as he fled the scene and eluded their pursuit. The rangers returned to the original site where they encountered defendant and discovered the victim's corpse and white Cadillac. Metroparks dispatchers contacted the Cleveland Police Department, which ultimately determined that the homicide occurred at defendant's residence in Cleveland.
Cleveland police officers Dedo and Schroeder testified that they observed the white Cadillac registered in the victim's name and found two envelopes with the name of defendant's sister, Lucy Socha, in the glove compartment. Cleveland police officer Miksch testified that defendant's blue pickup was found outside his house. As she approached the house, defendant came toward her. He had blood on his shirt and hands and no injuries. She placed defendant in her squad car. She called the fire department after smelling smoke and hearing a smoke alarm in defendant's house. She entered once the fire was extinguished and saw blood on the kitchen floor, a hammer with blood on it, and a trail of blood to a smoldering barrel of blood-soaked sawdust. Officer Brill corroborated her testimony.
The victim's wife testified that the victim was retired and collected rental income. He drove her to work that day but did not pick her up after work. She filed a missing persons report and the police came by later to ask her to identify the victim's body.
Two Coroner's office forensic scientists, Lansky and Heinig, testified that they examined various objects and blood samples. DNA in the samples was consistent with the victim's blood, but not defendant's. Neither one of them observed any blood on the broken goblet in defendant's house.
Several Cleveland police detectives concluded the prosecutions' testimony. Detective Maloney testified that he obtained a fingerprint from the outside of the driver's window of the victim's Cadillac which did not match the victim or defendant's fingerprints. Detective Franke was unable to obtain any fingerprints from the bloody hammer or a shovel found at defendant's residence.
Detective O'Malley testified he read defendant his Miranda rights at the Justice Center. Defendant had no physical injuries and did not request medical assistance. Defendant told him that he was a former Cleveland councilman and county prosecutor and should have known better. Defendant had $247 in cash when he was arrested and some of the bills had blood on them. O'Malley testified that the officers obtained a warrant and recovered papers from the probate court litigation between defendant and the victim concerning Lucy's estate.
Finally, Detectives Beaman and Hasan testified. Beaman testified he saw defendant's pickup truck outside his house with blood in the payload area. He saw blood in various places, including on a watch and keys to the Cadillac that were lying on the ground. Hasan corroborated Beaman's testimony and stated that he photographed and processed the bloody hammer and a shovel in the bloody wood chips.
The trial court granted a directed verdict for defendant on the aggravated robbery charge. Defendant thereafter presented testimony from four witnesses. His theory of the case was that he was attacked by the victim. Connie Burger testified that she had been defendant's friend for the past six years. She received a telephone call from defendant on April 30, 1999 and went to his house. She encountered several emergency vehicles and was prevented from entering. As defendant was placed in a police car, he asked her to take care of his animals. He appeared disoriented. She never knew him to be violent.
Retired Cleveland police officer Adolph Schultz testified that he had known defendant for thirty-five years. Two days after the incident, he drove to defendant's house and told defendant's companion, JR Murphy, who was cleaning the house not to dispose of a broken goblet.
JR Murphy testified that he lived with defendant and knew him for thirty-five years. He was in West Virginia on April 30, 1999, the day of the incident. Burger called him on May 1, 1999 and informed him that defendant had been arrested. He returned to Cleveland but was prevented by the police from entering the residence. The following day he was able to enter and clean the house. He identified a broken glass goblet that he found.
Murphy knew the victim through defendant's sister Lucy and knew about their dispute over her property. He never saw defendant or the victim fight, and never saw defendant fight anyone. Murphy stated that there were firearms in the house. He used the hammer to put a hubcap on the vehicle he drove to West Virginia.
Defendant, a semi-retired lawyer and former Cleveland councilman, was the final witness. He testified that he purchased his residence with his sister Lucy and lived in it for twenty-two years. He stated that his sister had unknowingly entered into an illegal marriage with defendant, who had not obtained a divorce from his wife. Defendant did not learn about this problem until his sister died in August 1993.
On February 16, 1999, about six weeks before this incident, defendant and the victim ultimately settled the probate court litigation concerning her estate. Defendant received the residence he purchased with his sister, and the victim received money and certain specific property listed in the settlement agreement.
Defendant stated that the victim came over to his house on April 30, 1999 with a clock, which defendant stated he was not interested in. Rather, defendant wanted some pictures of his parents, pictures that the victim had retained. The victim asked him for a drink, and they both sat drinking for hours watching a videotape deposition of Lucy. Defendant maintained that the victim left at 5:40 p.m. and that defendant also left for Lakewood. Defendant stated that when he returned ten minutes later to get a key he had forgotten, the victim was in his kitchen going through papers located with the videotape deposition.
Defendant gave the following account. He told the victim to leave, but the 78-year-old victim got between him and the phone, stated he was going to take the videotape, and ordered defendant not to call the police. The altercation escalated into pushing. Defendant was knocked down twice, and the victim broke a glass goblet, which he jabbed at defendant. The victim tried to stab him again, so defendant swung the hammer he had picked up. Defendant fell down and tried to escape, but the victim attacked him again. Defendant struck him with the hammer again.
Defendant stated he put the victim in a tarp, drove to the Metroparks, and dumped the body in the woods because he was scared. He drove home despite the orders of the park rangers directing him to stop. He stated that he also remembered the fire and calling his friend Burger. He maintained that he did not intend to kill the victim and was in fear for his own life.
Following defendant's evidence and the parties' closing arguments, the trial court instructed the jury. The trial court delivered murder, voluntary manslaughter, and self-defense instructions. The jury returned a verdict finding defendant guilty of murder.
Defendant's newly appointed appellate counsel raised two arguments. Defendant pro se subsequently sought to strike his appointed counsel's arguments and raise three of his own. We shall address all these arguments.
Defense counsel's first and defendant's second pro se assignments of error challenge the sufficiency of the evidence to support his murder conviction:
 MICHAEL SOCHA'S RIGHT TO DUE PROCESS OF LAW, AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS, WAS DENIED WHEN HE WAS CONVICTED OF AND SENTENCED FOR MURDER ON EVIDENCE WHICH WAS INSUFFICIENT AS A MATTER OF LAW IN LIGHT OF HIS AFFIRMATIVE DEFENSE.
This assignment lacks merit.
Defendant contends that the evidence was insufficient to support a conviction for murder. Defense counsel argues the evidence supported his claim of self-defense or voluntary manslaughter, whereas defendant pro se limits his argument to self-defense. Neither argument has merit.
The standard for reviewing the sufficiency of the evidence is summarized in State v. Jenks (1991), 61 Ohio St.3d 259. After reviewing the evidence in the light most favorable to the prosecution, we find the prosecution presented sufficient evidence for a reasonable jury to find, beyond a reasonable doubt, that defendant committed murder.
Defendant has the burden of proving self-defense by a preponderance of the evidence. Martin v. Ohio (1987), 480 U.S. 228. Defendant's version was that the 78-year-old, 134-pound, intoxicated victim repeatedly threatened him with a broken goblet. Although defendant's testimony supported a claim of self-defense, the jury was not required to accept as true his version. The jury could properly find that the repeated and massive beating inflicted on the back of the victim's head with a hammer was not consistent with defendant's legitimate right to self-defense.
The jury likewise was not required to conclude that defendant committed the lesser crime of voluntary manslaughter. State v. Rhodes (1992),63 Ohio St.3d 613. Defendant argued that he acted under the influence of sudden passion or in a sudden fit of rage brought about by serious provocation from the victim sufficient to incite defendant into using deadly force. Defendant argued that being attacked in his own home by an intruder was sufficient to enrage him. Although defendant's version of events was sufficient to raise a question for the jury concerning voluntary manslaughter, the jury was not required to accept that such mitigating circumstances existed.
To the extent that defendant argues this issue, his conviction for murder was likewise not against the manifest weight of the evidence. State v. Thompkins (1997), 78 Ohio St.3d 380. The record supports the jury's finding that defendant purposely caused the victim's death by repeatedly bludgeoning him in the back of the head with a hammer. We specifically note that the jury had a superior opportunity to view defendant and his demeanor while testifying, and to gauge his relative size compared to the older victim, when it evaluated the credibility of the witnesses and weight to be given their testimony. Under the circumstances, defendant has failed to show that in evaluating the evidence in the case at bar the jury lost its way and created a manifest miscarriage of justice.
Accordingly, defense counsel's first and defendant's second pro se assignments of error are overruled.
Defense counsel's second assignment of error, which challenges the trial court's refusal to instruct the jury that it dismissed a charge during trial, follows:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT REFUSED TO INSTRUCT THE JURY THAT AGGRAVATED ROBBERY IN THE INDICTMENT HAD BEEN DISMISSED.
This assignment lacks merit.
Defendant argues the trial court improperly failed to instruct the jury that it dismissed the aggravated robbery charge in the middle of the trial at the close of the prosecution's case. He argues there was a risk the jury would consider evidence concerning the aggravated robbery charge when the jury determined whether defendant committed murder. Under the circumstances, we find that defendant has failed to show any reversible error.
Defendant has cited no authority requiring such an instruction when the trial court grants a judgment of acquittal on one of several issues in a case. Trial courts are required to instruct on matters submitted to the jury. Because the aggravated robbery charge was dismissed and not submitted to the jury, the court was not required to give any instruction concerning it.
The prosecution's theory of the case was that defendant killed the victim because of animosity from the probate court litigation, not because he wanted to rob the victim. The trial court dismissed the aggravated robbery charge precisely to prevent the jury from speculating on it because the court concluded that there was not sufficient evidence to show that defendant took any of the victim's property. Jurors are presumed to follow the trial court's instructions and there is no indication that the jury considered issues upon which it had not been instructed. Defendant's argument requires that we assume the jury breached its oath without any evidence that it did so.
Defendant argues the prosecution alluded to aggravated robbery in its opening statement and that the jury may have become confused about his motive for the killing by concluding that it was because he wanted to steal the $247. The trial court, however, expressly instructed the jury that indictments and opening statements do not constitute evidence and that proof of motive was not required. Moreover, the trial court stated it would respond to any question the jury raised concerning the dismissed aggravated robbery charge. The trial court specifically instructed the jury to raise any questions it had and the jury raised no such question.
Accordingly, defense counsel's second assignment of error is overruled.
Defendant's first pro se assignment of error follows:
 MICHAEL SOCHA WAS DENIED DUE PROCESS AND A FAIR TRIAL IN VIOLATION OF THE 14th AMENDMENT WHEN THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GIVING THE JURY ERRONEOUS INSTRUCTIONS ON HOW TO CONSIDER AN INFERIOR DEGREE OFFENSE.
This assignment lacks merit.
Defendant pro se complains that the trial court instructed the jury to consider the lesser charge of voluntary manslaughter, even if the jury had already concluded that defendant committed the offense of murder.
The record shows that the trial court's instruction to the jury was consistent with Section 503.02 of the Ohio Jury Instructions. In State v. Benge (1996), 75 Ohio St.3d 136, 139-141, the Ohio Supreme Court approved giving instructions like those given in the case at bar.
The defendant in Benge made precisely the opposite argument and complained that the trial court did not instruct the jury to consider voluntary manslaughter after it had already found defendant committed murder. The Supreme Court agreed with the defendant that the jury should have been instructed to consider the mitigating evidence to determine whether defendant proved he committed the lesser offense of voluntary manslaughter. Id. at 140. Requiring such an instruction is favorable to the defense by requiring the jury to consider whether the lesser offense occurred.
The trial court in the case at bar complied with Benge and defendant has not shown reversible error in its instructions. The trial court explained in sequence all the possible alternative verdicts on each charge and indicated that the jury should consider each charge separately uninfluenced by its verdict on the other charges. The jurors specifically found when completing their verdict forms that defendant was guilty of murder and not guilty of manslaughter.
Accordingly, defendant's first pro se assignment of error is overruled.
Defendant's third pro se assignment of error follows:
 THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED MR. SOCHA A FAIR TRIAL PROTECTED UNDER THE 14th AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN IT WOULD NOT ALLOW EXPERT OPINION EVIDENCE WHICH WOULD HAVE BEEN EXTREMELY VALUABLE AND HELPFUL TO THE JURY IN DECIDING THE CASE.
This assignment lacks merit.
Defendant pro se argues the trial court improperly excluded expert opinion testimony. Before trial, defendant's counsel submitted a document captioned Motion to Permit Psychiatric Evaluation. Attached to the motion was a letter from psychiatrist Kurt Bertschinger, M.D., who evaluated defendant. The motion sought to introduce his report into evidence. Defendant argued the psychiatric information was similar to that offered to support the battered woman syndrome in State v. Koss (1990),49 Ohio St.3d 213.
Defendant has failed to show the trial court improperly excluded this material. First, by not raising the issue at trial and not proffering the omitted testimony, defendant failed to preserve any claim of error. State v. Grubb (1986), 28 Ohio St.3d 199, syllabus paragraph two. The Supreme Court's opinion in Koss specifically shows that the defendant properly proffered the excluded evidence in that case. Id. at 214.
Moreover, defendant's motion in the case at bar sought to introduce an unsworn report containing psychiatric opinions. Defendant has not cited any authority that a trial court is required to admit such material into evidence at trial. The proper method to introduce expert opinion testimony is to present it by testimony from a witness who is under oath and subject to cross-examination. Under the circumstances, we decline to address the substance of the material because defendant failed to properly present it.
Accordingly, defendant's third pro se assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ______________ KARPINSKI, J.:
KENNETH A. ROCCO, J., CONCURS; ANN DYKE, A.J., CONCURS IN JUDGMENT ONLY.