OPINION
Defendant Jermaine T. Cook, appeals a judgment of the Court of Common Pleas of Stark County, Ohio, convicting and sentencing him for one count of complicity to improperly discharge a firearm at or into a habitation, in violation of R.C. 2923.161, but not guilty of complicity in discharging a firearm from a motor vehicle specification, in violation of R.C. 2941.146. Appellant had originally been charged with two counts of complicity to improperly discharge a firearm at or into a habitation and two motor vehicle specifications, but through inadvertence, the jury received only one charge and specification. Appellant assigns three errors to the trial court:
ASSIGNMENTS OF ERROR
 ASSIGNMENT OF ERROR NO. 1
 THE EXCLUSION OF AN AFRICAN-AMERICAN JUROR BY THE STATE'S USE OF A PEREMPTORY CHALLENGE WAS A VIOLATION OF MR. COOK'S RIGHTS TO EQUAL PROTECTION AND DUE PROCESS OF LAW AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 2 AND 10 OF THE OHIO CONSTITUTION.
 ASSIGNMENT OF ERROR NO. 2
 IN VIEW OF THE EVIDENCE THE JURY'S VERDICT FINDING THE APPELLANT GUILTY AS AN AIDER AND ABETTOR OF THE PRINCIPAL OFFENSE BUT NOT GUILTY AS AN AIDER AND ABETTOR OF THE SPECIFICATION IS INHERENTLY INCONSISTENT IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 AND 16 OF THE OHIO CONSTITUTION.
 ASSIGNMENT OF ERROR NO. 3
 THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE THEREBY VIOLATING THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
The record indicates appellant, his co-defendant Keith Foster, and a person known as Terry from Cleveland, where appellant resided, came to Canton to attend a party. Appellant had never met his other co-defendants, Curtis Cash and Kyle Dabney before. At some point the evening, appellant and Foster encountered Cash and Dabney. Dabney was carrying two handguns on his person, and Dabney and Cash also had a shot-gun. They hid the shotgun outside before entering the party, but took the handguns into the party.
At some point, the party-goers ran low on beer. Dabney, Cook, Foster, and Cash, went to the drive-thru to purchase the beer. Before they left, Dabney hid his handguns underneath a lawnmower on the porch of the home, near where the shotgun had already been hidden. Appellant was inside and did not observe this.
Later in the evening, the beer supply again ran low, and Cook, Cash, Dabney, and Foster went again to buy more beer. This time appellant accompanied them. Foster, who did not have a driver's license, asked appellant to take over driving the car. Testimony differed regarding when appellant began to drive the car. Appellant testified he did not drive the car until after the shots were fired. At some point on the way back to the party, Foster, Cash, and Dabney fired the handguns and shotgun. There was testimony they fired the guns from the vehicle, and one man got out and fired the shotgun. The police investigated a complaint of shots fired, and stopped the vehicle, which appellant was driving. Officers searched the car and found the shotgun and handguns under the front seat. The officers could smell a burnt sulfur smell inside the car, consistent with a smell given off by guns that had recently been fired. The guns themselves had been recently fired, and the officer found spent cartridges matching the handguns.
Appellant testified in his own defense claiming he knew nothing of the shooting until it had started, and he had not driven the car until after the shooting had concluded. Cash testified no shots had ever been fired from the car that night, and Dabney testified appellant was driving the car prior to the shooting.
During voir dire, the State asked the court to remove one of the venire for cause. When the court refused, the State exercised one of its preemptory challenges to remove her. The juror, one of three African-Americans in the venire, has a son who is deaf. Appellant is a deaf African-American.
 I
In his first assignment of error, appellant argues the trial court erred in permitting the State to remove an African-American juror from the potential jury panel by means of one of its peremptory challenges.
In Batson v. Kentucky (1986), 476 U.S. 79 the United States Supreme Court devised a test to be used in determining whether a peremptory removal of a juror is racially motivated. The Ohio Supreme Court adopted the Batson test in Hicks v. WestinghouseMaterials Company (1997), 78 Ohio St.3d 95.
In Hicks, supra, the Ohio Supreme Court set forth the Batson
test:
 The United States Supreme Court set forth in Batson the test to be used in determining whether a peremptory strike is racially motivated. First, a party opposing a peremptory challenge must demonstrate a prima-facie case of racial discrimination in the use of the strike. Id.
at 96, 106 S.Ct. At 1723, 90 L.Ed.2d at 87. To establish a prima-facie case, a litigant must show he or she is a member of a cognizable racial group and that the peremptory challenge will remove a member of the litigant's race from the venire. The peremptory-challenge opponent is entitled to rely on the fact that the strike is an inherently "discriminating" device, permitting `those to discriminate who are of a mind to discriminate' State v. Hernandez (1992), 63 Ohio St.3d 577, 582, 589 N.E.2d 1310, 1313, certiorari denied (1992), 506 U.S. 898, 113 S.Ct. 279, 121 L.Ed.2d 206. The litigant must then show an inference of racial discrimination by the striking party. The trial court should consider all relevant circumstances in determining whether a prima-facie case exists, including all statements by counsel exercising the peremptory challenge, counsel's questions during voir dire, and whether a pattern of strikes against minority venire members is present. See, Batson at 96-97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. Assuming a prima-facie case exists, the striking party must then articulate a race-neutral explanation "related to the particular case to be tried." Id at 95, 106 S.Ct. At 1724, 90 L.Ed.2d at 88. A simple affirmation of general good faith will not suffice. However, the explanation "need not rise to the level justifying exercise of a challenge for cause." Id
at 97, 106 S.Ct. At 1723, 90 L.Ed.2d at 88. The critical issue is whether a discriminatory intent is inherent in counsel's explanation for use of the strike; intent is present if the explanation is merely pretext for exclusion on the basis of race. Hernandez v New York (1991), 500 U.S. 352, 363, 111 S.Ct. 1859, 1868, 114 L.Ed.2d 395, 409.
The court engaged in an extensive discussion with both counsel and the prospective juror regarding her ability to be impartial in the case, given that she has a deaf son and appellant is deaf. The juror indicated her willingness to set aside her personal feelings in the case. The court refused to remove the juror for cause, but permitted the State to use a preemptory challenge because the State had given a race-neutral reason.
A trial court's decision regarding a prosecutor's motive for exercising a preemptory challenge is a factual determination which must not be over turned on appeal unless it is clearly erroneous, see State v. Cook (1992), 65 Ohio St. 3d. 516. As the United States Supreme Court pointed out in Batson, supra, the question necessarily turns upon a credibility evaluation, which the trial court is best situated to make, Batson at 98.
We have reviewed the record, and we find the State presented ample race-neutral reasons to justify its use of a preemptory challenge to this juror, one of three African-Americans in the venire. The juror asserted she would attempt to be objective. She had also testified she had twice been a victim of crime herself, and was bothered by the fact the police never arrested anyone for those crimes. The United States Supreme Court has directed us to give deference to the trial court's determination of the credibility of the State's race-neutral, non discriminatory purpose, and we do so.
The first assignment of error is overruled.
 II
In his second assignment of error, appellant urges the jury's verdict is inconsistent because it found him guilty of aiding and abetting the discharge of a firearm into a habitation but not guilty of the motor vehicle specification. Appellant asserts there was no evidence presented in the record appellant ever fired a gun on the date in question, and the State alleged appellant's entire involvement was driving the car from which the guns were fired. There was testimony, however, one of the shooters exited the vehicle to fire his gun, and then got back in to flee.
In State v. Koss (1990), 49 Ohio St.3d 213, the jury found the defendant guilty of voluntary manslaughter but not guilty of the gun specification. On appeal, he argued the jury's verdict was inconsistent in view of the evidence the victim died of a gun shot wound. The Supreme Court found the verdict was inconsistent, and remanded the matter for retrial on underlying offense but not the gun specification.
The State responds in State v. Perryman (1976), 49 Ohio St.2d 14, judgment vacated with respect to the death penalty 438 U.S. 911, the Ohio Supreme Court held: ". . . where a jury convicts a defendant of aggravated murder committed in the course of an aggravated robbery, and where that defendant is concurrently acquitted of a specification indicting him for identical behavior, the general verdict is not invalid," Perryman, paragraph three of the syllabus. The Perryman court explained the jury's determination on the specification does not change the finding of guilt on the principal charge. Appellant urges Koss, supra, is a more recent case, wherein the Supreme Court could have adopted the rationale of Perryman, but did not.
The jury could have believed appellant aided and abetted the shooter who stepped from the vehicle to fire the gun, then got back into the vehicle. The verdicts are consistent which some of the evidence presented.
We find the facts in the case before us are more similar to those Perryman than in Koss, where the verdicts were completely inconsistent on their face. Koss is the case in with the Supreme Court established the battered woman syndrome as admissible to explain the state of mind of the defendant. Koss focuses on this issue, and the question of the contradictory verdicts on the principal offense and the specifications was a secondary issue. The Supreme Court remanded the matter for retrial based upon the battered woman syndrome, and noted the defendant could not be retried on the gun specification, Koss, at 219. Here, the jury's finding of guilt on the underlying offense does not require a similar finding on the specification. For this reason, we find, applying Perryman, supra, the guilty verdict here is valid.
The second assignment of error is overruled.
 III
Finally, appellant urges the jury verdict is against the manifest weight and sufficiency of the evidence.
In State v. Thompkins, (1997), 78 Ohio St.3d 380, the Ohio Supreme Court explained the similarities and differences between the concepts of manifest weight and sufficiency of the evidence. According to the Thompkins court, the distinctions are both qualitative and quantitative. Sufficiency of the evidence refers to the legal standard which the trial court applies to determine whether the evidence is legally sufficient to support a verdict as a matter of law, Thompkins at 386. Even if a judgment is sustained by sufficient evidence, it may nevertheless be against the weight of the evidence, because the concept of weight of the evidence concerns the amount of credible evidence offered in a trial in support of one side of the issue. Weight of the evidence refers to a jury's determination, rather than that of the trial court, Thompkins at 387.
Appellant argues in order to be found guilty as an aider and abettor, the State must prove the accomplice possessed the mental state required for the commission of the underlying offense and also that accomplice performed some act to facilitate the commission of the principal offense, see State v. Coleman (1988),37 Ohio St.3d 286. Mere presence of an accused where the crime is committed is not sufficient to establish aiding and abetting, even if the accused knows a crime is being committed or acquiesces in the criminal conduct of others, Coleman, supra, at 289. Appellant argues the State did not present sufficient evidence appellant possessed the requisite state of mind.
Appellant argued he was an unknowing participant in this shooting, but, the State presented evidence of his co-defendant's testimony, which if believe by the jury, supported the State's theory of the case.
We have reviewed the record, and we find there was sufficient, competent and credible evidence presented on each element of the crime charged to permit the reasonable jury to find appellant guilty beyond a reasonable doubt.
The third assignment of error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed, and the cause is remanded to that court for execution of sentence.
By Gwin, P.J., Hoffman, J., and Reader, J., concur.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed, and the cause is remanded to that court for execution of sentence. Costs to appellant.