OPINION
Appellant Dezi Ford appeals his conviction, in the Stark County Court of Common Pleas, for one count of involuntary manslaughter. The following facts give rise to this appeal. On December 25, 1998, appellant visited his son, Zontius Ford, who lived with Zontius' mother, Alvina Harris. While at Harris' apartment, appellant asked for some gas money. Harris went with a friend to get the money from an ATM, leaving Zontius in the care of appellant. Harris left her residence for approximately ten to twenty minutes. In the meantime, Harris' brother, Blakely Harris, along with his girlfriend and daughter, came to visit. When they arrived, appellant was standing in the kitchen holding Zontius, who seemed to be sleeping. Appellant eventually joined the guests in the living room. The people noticed a persistent smell, in both the kitchen and the living room, as if the child had defecated. Appellant excused himself to change the child's diaper. When Harris came home, she went upstairs where she found the child with his tongue out and his eyes rolled up in his head. Harris' brother called 911 while appellant tried to administer CPR on the child. Moments later, the ambulance arrived and the paramedics found the child in full arrest with no pulse. They immediately performed CPR on the boy with two-finger compressions and transported him to Mercy Hospital. The child never recovered and was pronounced dead at the hospital. An autopsy revealed that Zontius died from internal bleeding caused by blunt force trauma. During the investigation, appellant admitted to shadow boxing with his son while Harris went to the ATM. He admitted that he may have gotten carried away and hit Zontius at least once, knocking the boy to the floor. The Stark County Grand Jury indicted appellant on one count of murder and one count of felonious assault, to which appellant pled not guilty. This matter proceeded to trial on May 10, 1999. At the close of evidence, the trial court instructed the jury on the lesser included offense of involuntary manslaughter. Following deliberations, the jury returned a verdict finding appellant not guilty as charged in the indictment, but guilty of involuntary manslaughter. The trial court sentenced appellant to a prison term of eight years. Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration.
 I. THE TRIAL COURT ERRED IN NOT OFFERING THE JURY APPELLANT'S REQUESTED INSTRUCTION ON THE LESSER INCLUDED OFFENSE OF NEGLIGENT HOMICIDE.
 II. APPELLANT WAS PREJUDICIALLY DEPRIVED OF HIS UNITED STATES AND OHIO CONSTITUTIONAL RIGHTS TO A FAIR TRIAL DUE TO THE INEFFECTIVE ASSISTANCE OF COUNSEL.
 III. THE TRIAL COURT ERRED IN PERMITTING THE PROSECUTOR TO ARGUE AND PRESENT EVIDENCE REGARDING APPELLANT'S PRIOR BAD ACTS.
 IV. THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO SUPPORT A CONVICTION, AND THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 V. OTHER ERRORS WERE COMMITTED AT TRIAL NOT RAISED HEREIN BUT APPARENT ON THE RECORD.
 I.
Appellant contends, in his First Assignment of Error, that the trial court erred in not offering the jury appellant's requested instruction on the lesser included offense of negligent homicide. We disagree. In reviewing jury instructions on appeal, we must first examine the specific charge at issue in the context of the entire charge, not in isolation. State v. Thompson (1987), 33 Ohio St.3d 1,13. Jury instructions are within the trial court's discretion, which we will not disturb absent an abuse of that discretion. State v. Guster (1981), 66 Ohio St.2d 266, 271. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. A review of the record reveals that the trial court did not abuse its discretion when it refused to instruct the jury on negligent homicide as a lesser included offense of murder. Appellant asserts that the charge of negligent homicide is a lesser included offense of the charged offense of murder and that the evidence presented warranted the lesser charge. The Ohio Supreme Court set forth the standard by which criminal offenses are reviewed to determine lesser included offenses in State v. Deem (1988), 40 Ohio St.3d 205. The Supreme Court held that a jury may consider three groups of lesser offenses: (1) attempts to commit the crime charged; (2) inferior degrees of the indicted offense; or (3) lesser included offenses. Id. at paragraph one of the syllabus. An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot be committed without the lesser offense also being committed; and (iii) some element of the greater offense in not required to prove the commission of the lesser offense. Id. at paragraph three of the syllabus. The Ohio Supreme Court subsequently qualified Deem by ruling that a criminal defendant is not entitled to a jury instruction on a lesser offense unless the jury could reasonably find against the State on an element of the greater charged offense and still find for the State on the defendant committing the lesser included offense. State v. Thomas (1988), 40 Ohio St.3d 213, paragraph two of the syllabus. Appellant claims that the jury should have received an instruction on negligent homicide, and that the failure to do so deprived him of his constitutional right to due process. Although the first prong of the Deem test is met because negligent homicide carries a lesser penalty than murder, negligent homicide is not a lesser included offense of murder because murder can be committed without committing negligent homicide. State v. Koss (1990), 49 Ohio St.3d 213, 219. Murder is defined as purposely causing the death of another, R.C.2903.02(A), while negligent homicide is defined as negligently causing the death of another by means of a deadly weapon or dangerous ordnance, R.C. 2903.05(A). The Supreme Court concluded that one can purposefully cause the death of another by means other than by a deadly weapon or dangerous ordnance. Koss at 219. Consequently, the Supreme Court specifically stated that "[n]egligent homicide is not a lesser included offense of murder." Id. at paragraph four of the syllabus. Appellant attempts to distinguish this case from Koss by maintaining that his hands are trained and skilled as "deadly weapons." R.C. 2923.11(A) defines "deadly weapons" as "* * * any instrument, device or thing capable of inflicting death, and designed or specifically adopted for use as a weapon, or possessed, carried, or used as a weapon." Appellant therefore concludes that negligent homicide is a lesser included offense in this case. This argument still does not meet the test set forth, in Deem, because appellant was charged with a relatively new subsection of the murder statute, which prohibits causing the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree. R.C.2903.02(B). Negligent homicide is not a lesser included offense of murder as defined in R.C. 2903.02(B) because one can cause the death of another as a proximate result of committing or attempting to commit the prescribed felony by means other than by a deadly weapon or dangerous ordnance. The underlying felony committed by the appellant was child endangerment. The appellant is a professional prize fighter, and the fact that appellant himself is arguing that his hands are trained and skilled to kill leaves us no doubt that his actions on Christmas day of 1998 put his son in danger. Appellant was not negligent in boxing with Zontius. Appellant was well aware that shadow boxing with a fourteen-month-old could endanger such a defenseless child. Thus, for the purposes of analysis under Deem, it is irrelevant that appellant's hands may constitute a "deadly weapon." Because negligent homicide is not included in murder, as defined in R.C.2903.02(B), negligent homicide is not a lesser included offense of that subsection of the murder statute. Appellant's First Assignment of Error is overruled.
 II.
In his Second Assignment of Error, appellant contends he received ineffective assistance of counsel because defense counsel acted in a fashion that consistently provoked reprimands from the trial judge, for which he was found in contempt and fined $5,000. We disagree. The standard for reviewing claims for ineffective assistance of counsel was set forth in Strickland v. Washington (1984), 466 U.S. 668. Ohio adopted this standard in the case of State v. Bradley (1989), 42 Ohio St.3d 136. These cases require a two-prong analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective. That is, whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his essential duties to the client. In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Id. at 142. Because of the difficulties inherent in determining whether effective counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel. State v. Carter (1995), 72 Ohio St.3d 545, citing Lockhart v. Fretwell (1993), 506 U.S. 364. We find that while counsel's performance during trial may have been unprofessional, his conduct did not amount to ineffectiveness pursuant to the Strickland standard. Appellant cannot argue that counsel's representation fell below a reasonable standard because the jury acquitted appellant of the charged offenses of murder and felonious assault despite counsel's dramatic and circus-like antics. The jury's guilty verdict of involuntary manslaughter is very reasonable given the evidence. Appellant admitted to punching his son more than once, and it was up to the jury to determine whether the force of those blows caused Zontius to internally bleed to death. While the jury determined that appellant did not intentionally murder his son, as proven by the acquittal of murder, it did find the weight of the evidence convincing enough to convict on involuntary manslaughter. Counsel's mode of questioning was improper, but did not fall below the line of reasonable effectiveness and violate any essential duties owed to appellant. Appellant was therefore not prejudiced in any way regarding his assistance of counsel. Appellant's Second Assignment of Error is overruled.
 III.
Appellant contends, in his Third Assignment of Error, that the trial court erred in permitting the prosecutor to argue and present evidence regarding his prior bad acts. Such evidence, he asserts, was unfairly prejudicial and irrelevant to the matter before the jury. We disagree. The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173. Therefore, we will not disturb a trial court's evidentiary ruling unless we find said ruling to be an abuse of discretion. We must look at the totality of the circumstances in the case sub judice, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably. Appellant alleges that the state attempted to show that he is a "bad man" and a "deadbeat dad" because he did not help to support his son. During the state's direct examination of Zontius' mother, Alvina Harris, the following testimony took place: Q. During the first six months or so of Zontius' life, were there times that [appellant] came to visit you to see you on Kalahari Drive?
A. Yes
 Q. Were there times that he brought clothing or food or anything for the support of Zontius?
 A. One time he brought him some clothes after his birthday when he turned one.
Q. That would have been in October of `98?
A. Yeah.
Q. There was no other support for him?
A. No. Tr. Vol. II at 189,191.
Appellant claims that the questioning was improper according to the Rules of Evidence, and that the questions elicited information that was merely to prove that he was a bad person. In part, the applicable evidence rule, Rule 404(B), provides: Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Ohio's evidence statute, R.C. 2945.59, is in accordance with this rule. See State v. Broom (1998), 40 Ohio St.3d 277, 281. This statute provides: In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant. In constructing this rule and statute, the Supreme Court held that because R.C. 2945.59 and Evid.R. 404(B) codify an exception to the common law, with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict. State v. Burson (1974), 38 Ohio St.2d 157; State v. DeMarco (1987),31 Ohio St.3d 191, 194. The rule and the statute contemplate acts which may or may not be similar to the crime at issue. If the other act does in fact "tend to show" by substantial proof any of those enumerated exceptions, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, then the evidence of the other act may be admissible. State v. Flonnory (1972), 31 Ohio St.2d 124, 126; Broom, supra, at paragraph one of the syllabus. We agree with the state that the evidence tended to show motive and therefore was admissible. Appellant attempted to gain sympathy from the jury by claiming that he was a caring and supportive father. The evidence of appellant's lack of support was relevant to rebut appellant's assertion. Although the evidence was not similar to the crime at issue, lack of support, financial or otherwise, was sufficient to support the finding that appellant was not the caring and supportive father he claimed to be, a permissible purpose for admission under both Evid.R. 404(B) and R.C. 2945.59. The jury may give weight to the testimony in question in determining why such a "caring and supportive" father would repeatedly punch his son, causing injuries comparable to those suffered in a violent car accident. Thus, in determining whether the decision below was arbitrary, unreasonable or unconscionable, we find no abuse of discretion. Appellant's Third Assignment of Error is overruled.
 IV.
Appellant contends, in his Fourth Assignment of Error, that the evidence at trial is insufficient to support a conviction, and the jury's verdict is against the manifest weight of the evidence. We disagree. Appellant's assignment of error questions the sufficiency of the evidence to sustain a conviction for involuntary manslaughter and challenges the jury's verdict as against the manifest weight of the evidence. On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175. See also, State v. Thompkins (1997), 78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. We do not agree that the evidence, taken in totality, fails to support the state's allegations linking appellant to the criminal conduct. Appellant admitted to hitting Zontius more than once. Appellant argues that the force with which he struck his son was not severe enough to cause the laceration of his heart, liver, and pancreas, as well as injury to the child's kidneys and spleen and the fracture of three ribs. The severity of those blows, however, was established by the fact that appellant was the only person with sole supervision of the child at the time of his injuries, and the injuries were too severe to be caused by the administration of CPR procedures, as testified by the coroner. The fact that appellant also tried to hide his actions from the child's mother and medical personnel indicates a consciousness of guilt. We find sufficient evidence to support this conviction. We also find that the jury did not lose its way in making the reasonable inference from the credible evidence that appellant struck his son at least twice, with violent blows, that caused fatal injuries. Appellant's consciousness of guilt, as well as his own confession and medical evidence at trial, resulted in his conviction. We do not find that the jury lost its way thereby creating a manifest miscarriage of justice. Appellant's Fourth Assignment of Error is overruled.
 V.
Appellant contends, in his Fifth Assignment of Error, that a review of the entire record reveals other errors meriting reversal of his conviction and sentence. We disagree. In support of this assignment of error, appellant cites Anders v. California (1967),386 U.S. 738. A review of the testimony presented at trial and the entire record reveals no error prejudicial to appellant, warranting reversal of his conviction and/or sentence. Appellant was not denied a fair trial. Appellant's Fifth Assignment of Error is overruled. For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed. By: Reader, V. J. Hoffman, P.J., and Edwards, J., concur.