OPINION
{¶ 1} Defendant-appellant Auto Owners Insurance Company appeals from the June 20, 2006 Judgment Entry of the Stark County Court of Common Pleas.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On August 25, 2003, an accident occurred between a pickup truck and a motorcycle operated by Kurt Dieble. Dieble, (hereinafter "the decedent") died as a result of his injuries and was survived by his parents, Thomas and Pauline Dieble, and two siblings, Katherine and Steven Dieble.
 {¶ 3} At the time of the accident, the decedent was employed by Canton Cycle Specialties, Inc., and was test driving a motorcycle after having performed repairs on the same. Canton Cycle was insured under a garage liability policy issued by appellant Auto Owners Insurance Company.
 {¶ 4} On March 24, 2004, appellee Katherine Dieble, as Administrator of the Estate of Kurt Dieble, filed a complaint seeking underinsured motorists benefits from appellant Auto Owners Insurance. The Administrator of the Ohio Bureau of Workers Compensation (BWC) was named as a defendant in the complaint. The complaint indicated that, subsequent to the decedent's death, the BWC had served notice upon appellee of its intent to assert its subrogation rights pursuant to R.C.4123.93 et seq. for benefits and expenses it had paid as a result of the injuries suffered by the decedent that ultimately resulted in his death.
 {¶ 5} On April 16, 2004, the BWC filed a motion requesting that it be realigned as a party plaintiff. The BWC, in its motion, alleged that it had paid $38,648.57 in medical bills and $5,743.77 in wage benefits as a result of the decedent's injuries and *Page 3 
that its involvement in the case sub judice "flows from its status as a subrogee to Plaintiffs claims against the named defendants." The BWC argued that realignment was appropriate given the "unity of interests" between the BWC and appellee. As memorialized in a Judgment Entry filed on April 19, 2004, the BWC's motion was granted and it was granted the right to intervene as a party plaintiff and to file a complaint. The BWC filed its complaint on April 26, 2004.
 {¶ 6} Subsequently, appellee filed a motion for partial summary judgment on September 14, 2004, seeking a determination as to coverage under the policy issued by appellant Auto Owners Insurance and a determination that the collision was the proximate cause of the decedent's death.
 {¶ 7} On September 28, 2004, appellee filed a Motion in Limine seeking an order prohibiting appellant from introducing at trial any evidence relating to the alleged presence of drugs in the decedent's body at the time of the accident. Appellee specifically argued that such evidence was irrelevant and only served to prejudice the jury.
 {¶ 8} Pursuant to a Judgment Entry filed October 6, 2004, the trial court granted appellee's Motion for Partial Summary Judgment, finding that appellant Auto Owners Insurance had an obligation to provide uninsured motorist coverage benefits under its policy, that the decedent qualified as an insured under the policy, and that the collision was the proximate cause of the decedent's death.
 {¶ 9} On October 15, 2004, appellee filed a supplement to its Motion in Limine. Appellee, in the supplement, alleged as follows: *Page 4 
 {¶ 10} "In Plaintiffs Reply to Defendant's Response to Motion for Summary Judgment, Plaintiff attached the affidavit of Jay Spencer[1]
regarding the toxicology records in the decedent's hospital records. Plaintiff respectfully submits that the affidavit (a copy of which is attached hereto as Exhibit 1) further supports Plaintiff's contention that there should be no evidence or reference to these issues at trial.
 {¶ 11} "As set forth in Mr. Spencer's affidavit, there is no way to determine from the records whether Kurt Dieble was under the influence or impaired in any way. In fact, there is no way to determine that Kurt Dieble had even used any drug on the day of the collision. Mr. Spencer's affidavit confirms that traces of these substances can remain in the system for days and sometimes weeks after their ingestion.
 {¶ 12} "Accordingly, this Court should prohibit the Defendant from making any reference to use or ingestion of any substances by the decedent."
 {¶ 13} Appellant then appealed from the trial court's October 6, 2004, Judgment Entry granting partial summary judgment to appellee. Pursuant to an Opinion filed on June 13, 2005, in Dieble v. Auto OwnerInsurance, Stark App. No. 2004CA00339, 2005-Ohio-2991, this Court reversed the judgment of the trial court. This Court found that the decedent was an insured under the liability insurance policy issued by appellant. Auto Owners Insurance to Canton Cycle. However, this Court found that there was a genuine issue of material fact as to whether the decedent's use of drugs took the decedent outside the course and scope of his employment and rendered him ineligible for benefits under the policy.
 {¶ 14} On January 31, 2006, appellee filed a Motion for Partial Summary Judgment, arguing that it was undisputed that the decedent was in the course and *Page 5 
scope of his employment at the time of the accident. Following an evidentiary hearing, the trial court, pursuant to a Judgment Entry filed on March 6, 2006, found that the decedent was engaged in the course and scope of his employment at the time of the collision and that there was no evidence that he was impaired at such time. On such basis, the trial court found that coverage existed under appellant's policy.
 {¶ 15} Subsequently, on June 5, 2006, appellee filed a Motion in Limine once again seeking an order from the trial court prohibiting appellant from introducing at trial any evidence regarding the alleged drug use of the decedent "at any time during his life." As memorialized in a Judgment Entry filed on June 15, 2006, the trial court granted such motion "pending further order of the Court."
 {¶ 16} Thereafter, on June 19, 2006, the case proceeded to jury trial solely on the issue of the amount of damages. All other issues had been resolved.
 {¶ 17} On June 19, 2006, the jury rendered a verdict in favor of appellee and against appellant in the amount of $560,692.00.[2] The jury's verdict was memorialized in a Judgment Entry filed on January 20, 2006.
 {¶ 18} Appellant now raises the following assignments of error on appeal.
 {¶ 19} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING APPELLANT THE OPPORTUNITY TO PRESENT EVIDENCE OF THE DECEDENT'S USE OF NARCOTICS.
 {¶ 20} "II. THE TRIAL COURT ERRED IN PERMITTING PLAINTIFF TO SUBMIT INITIAL MEDICAL BILLS TO THE JURY. *Page 6 
 {¶ 21} "III. THE TRIAL COURT ERRED AS A MATTER OF LAW IN ALLOWING THE JURY TO HEAR EVIDENCE REGARDING THE AMOUNT OF INSURANCE COVERAGE AVAILABLE."
 I {¶ 22} Appellant, in its first assignment of error, argues that the trial court erred in denying appellant the opportunity to present evidence of the decedent's use of narcotics. Appellant specifically contends that it should have been permitted to introduce evidence that the decedent drank five to six beers a day and consumed cocaine, marijuana and opiates in order to "test the credibility of the family members' statements regarding their close relationship with the decedent." We disagree.
 {¶ 23} As is stated above, appellee filed a Motion in Limine seeking an order from the trial court prohibiting appellant from introducing at trial evidence regarding the decedent's alleged drug and alcohol use. The trial court, via a Judgment Entry filed on June 15, 2006, granted such motion "pending further order of the Court." (Emphasis added).
 {¶ 24} After the jury was impaneled, the issue of the trial court's ruling on the Motion in Limine was discussed. Appellant's counsel stated on the record, in relevant part, as follows:
 {¶ 25} "Mr. Pelini: Now comes the Defendant and I understand that the Court has ruled on the motions in Limine prohibiting the Defendant from making any reference of the fact that the Plaintiff's decedent consumed cocaine, marijuana, and opiates and also drank five to six beers a day. *Page 7 
 {¶ 26} "We had planned to elicit that testimony through various family members and based upon medical records that had been provided to us through the exchange of discovery, Plaintiffs counsel had provided us with those medical records in response to request for production of documents.
 {¶ 27} "If we go into that, we believe it makes impact upon the knowledge that the various family members had with regard to the activities of the decedent, how well they did or did not know him; and we believe it is relevant for those reasons and intended to use it for those reasons and those reasons only, did not attempt to use it or would not have attempted to use it to indicate that he was under the influence or under the effect or impaired at the time of the accident, just that that is part of his persona, if you will, to show the relationship between narcotics and him and also the fact that various family members did not know anything at all about that.
 {¶ 28} "So with that, Judge, I had planned to indicate in my opening statement, make reference to that.
 {¶ 29} "Also planned to do so in the cross-examination of family members; and with this proffer that I am now making, I want to make sure that I have properly brought it up, I preserved it, I have proffered it. I am not going to go into it in any way, shape, or form.
 {¶ 30} "I don't want any error, any problems. I want to make sure this is a nice clean trial. I want to preserve my objection for appellate purposes." Transcript at 101-103.
 {¶ 31} The trial court then permitted appellant to proffer the decedent's medical records, which contained a reference to a positive drug screen that was done *Page 8 
when the decedent was taken to the emergency room and which were provided as part of discovery.[3] The trial court stated that it had no problem with the medical records since appellant was proffering them in reference to the positive drug screens.
 {¶ 32} We note that a ruling on a motion in limine is a tentative, interlocutory, precautionary ruling by a court in anticipation of its ruling on evidentiary issues at trial. McCabe-Marra Co. v. Dover (1995),100 Ohio App.3d 139, 652 N.E.2d 236. The denial or granting of a motion in limine does not preserve the error for review on appeal. State v.Hill (1996), 75 Ohio St.3d 195, 661 N.E.2d 1068. It is incumbent upon the party seeking to introduce the evidence, who has been temporarily precluded from doing so, to offer the evidence at trial when the issue is actually reached during the trial by proffer or otherwise in order to enable the court to make a final determination as to its admissibility and to preserve the record for appeal. Evid. R. 103(A)(2); State v.Grubb (1986), 28 Ohio St.3d 199, 203, 503 N.E.2d 142; State v.White (1982), 6 Ohio App.3d 1, 451 N.E.2d 533. See Jones v. Capco, Cuyahoga App. No. CV-441168, 2003-Ohio-5807. Absent a proffer, a reviewing court has no way of determining if the excluded evidence prejudiced the appellant. Sulfridge v. Piatt (Dec. 26, 2001), Adams App. No. 00CA695, 2001 WL 1764391. See also In Re: Whaley (1993),86 Ohio App.3d 304, 620 N.E.2d 954. Accordingly, if no proffer is made, the party seeking to introduce the evidence in question waives the error on appeal. Frazier v. Ullom Realty, Inc. (Feb. 13, 1998), Lawrence App. No. 97CA19, 1998 WL 65776.
 {¶ 33} While appellant argues that the issue was not perfected for appeal because appellant failed to proffer any evidence or question any witnesses about their *Page 9 
knowledge of the decedent's alleged alcohol and/or drug use, we disagree. We find that counsel's statements to the trial court concerning the decedent's alleged drug and alcohol use and the proffer that counsel made into the record, which is set forth above, to be sufficient to perfect the issue for appeal.
 {¶ 34} As is stated above, appellant sought to introduce evidence of the decedent's alleged use of drugs and alcohol to "test the credibility of the family members' statements regarding their close relationship with the decedent." In the case sub judice, the decedent's family members were seeking compensation for the damages they suffered due to the decedent's death. Appellant now contends that evidence of the decedent's alleged alcohol and drug use is relevant, because, if a family member had no knowledge of such drug or alcohol use, he or she must not have had a close relationship with the decedent.
 {¶ 35} However, we find that the trial court did not err in denying appellant the opportunity to present evidence of the decedent's use of narcotics because the probative value of such evidence is substantially outweighed by the danger of unfair prejudice. See Evid.R. 403(A).[4]
 {¶ 36} The only issue for the jury to determine in this matter was the amount of damages. All issues relating to liability and causation had been resolved. We concur with appellee that, by introducing such evidence, appellant "hoped to inflame and prejudice the jury with drug test results." If such evidence had been admitted, the *Page 10 
jury might have been inclined to hold the decedent responsible for the accident when the issue of liability was not before them.
 {¶ 37} We find, therefore, that the trial court did not err in denying appellant the opportunity to present evidence of the decedent's use of narcotics and alcohol.
 {¶ 38} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 39} Appellant, in its second assignment of error, argues that the trial court erred in permitting appellee to submit initial medical bills to the jury. Appellant specifically maintains that the trial court should not have allowed appellee to submit medical bills in the amount of $50,691.68 to the jury when all of the decedent's medical expenses were paid by the BWC, which paid only $39,994.61 under discounted medical rates.
 {¶ 40} Assuming, arguendo, that appellant is correct, we find that such error was harmless. The parties agree that the BWC only paid $39,994.61 for the decedent's medical expenses after negotiating discounts. Thus, as noted by appellee, "[t]here is no need for a re-trial of those issues, merely a reduction of the judgment in the amount of $10,697.07."
 {¶ 41} Appellant's second assignment of error is, therefore, overruled.
 III {¶ 42} Appellant, in its third assignment of error, argues that the trial court erred in allowing the jury to hear evidence as to the amount of insurance coverage available. Appellant notes that the trial court permitted John Villilo, appellant's *Page 11 
representative, to testify, over appellant's objection, that the limits of liability under the policy issued by appellant to Canton Cycle Specialists, Inc. was $1,000,000.00.
 {¶ 43} The admission or exclusion of evidence rests in the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173,180, 510 N.E.2d 343. Therefore, we will not disturb a trial court's evidentiary ruling unless we find the trial court abused its discretion. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." See Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 44} As a general rule, all relevant evidence is admissible. Evid.R. 402. However, Evid.R. 403(A) reads: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." As an appellate court, we will not interfere with a trial court's balancing of probativeness and prejudice " * * * unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby." State v. Slagle (1992), 65 Ohio St.3d 597, 602,605 N.E.2d 916.
 {¶ 45} We concur with appellant that the amount of insurance coverage available was not relevant. The issue of coverage had already been determined and, therefore, the insurance contract and its language regarding limits of coverage was not relevant. Moreover, a copy of the insurance policy issued by appellant to Canton Cycle Specialists, Inc. was attached to appellee's complaint. As is stated above, the only issue remaining for the jury was the amount of damages. *Page 12 
 {¶ 46} However, we find that appellant was not prejudiced by the testimony regarding the amount of coverage available. After John Villilo testified that "[t]he combined limit of liability is a million dollars per occurrence," the trial court advised the jury as follows:
 {¶ 47} "The Court: Ladies and Gentlemen, just so that you understand because I want to make sure you understand. That is what the policy provides. That is the coverage that was purchased.
 {¶ 48} "The actual damages in a particular case could be more or less than that depending on the facts of the particular case; but that is the coverage amount, the limits that have been purchased. Thank you. You may proceed." Transcript at 133.
 {¶ 49} During jury instructions, the trial court further cautioned the jury that "the policy limits are just that. Those are the limits of the policy. That is what was purchased. The actual damages suffered may be less than that; they may be more than that. The policy is what it is, but you are to determine the legal damages that they are required to pay." Transcript at 262-263. Thus, the trial court gave curative instructions to the jury. A jury is presumed to follow the curative instructions of the trial court. State v. Loza (1994), 71 Ohio St.3d 61,641 N.E.2d 1082.
 {¶ 50} Furthermore, we find that appellant was not prejudiced by admission of evidence regarding the $1,000,000.00 policy limits. Despite testimony regarding the same, the jury awarded appellee $560,692.00, which is substantially less than the policy limits. *Page 13 
 {¶ 51} Appellant's third assignment of error is, therefore, overruled.
 {¶ 52} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
By: Edwards, J. Farmer, P.J. and Wise, J. concur JUDGES
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] Spencer is a criminalist with the Canton Stark County Crime Laboratory.
[2] The jury awarded $550,692.00 in damages and $9,950.00 for funeral expenses.
[3] The medical records indicated that the decedent's urine tested positive for opiates, cocaine and cannabis.
[4] When considering evidence under Evid.R. 403, "the trial court is vested with broad discretion and an appellate court should not interfere absent an abuse of that discretion." Accordingly, we will not reverse the trial court's decision absent an abuse of discretion, which implies the trial court's attitude was unreasonable, arbitrary, or unconscionable. "A decision is unreasonable if there is no sound reasoning process that would support that decision." AAAA Enterprises,Inc. v. River Place Community Urban Redevelopment Corp. (1990),50 Ohio St.3d 157, 161, 553 N.E.2d 597. *Page 1