OPINION
{¶ 1} Defendant-appellant, Shannon L. Sorah, appeals her conviction in the Clermont County Court of Common Pleas for endangering children. We affirm appellant's conviction.
 {¶ 2} On June 2, 3005, appellant and her husband, Joseph Sorah, attended a festival in Milford, Ohio with their two-year-old son and six-week-old daughter. At the festival that evening, appellant's niece became concerned that something was wrong with appellant's daughter, because she was crying as if she were in pain. Appellant attempted to console her daughter by giving her a bottle, and the infant began vomiting. Eventually, appellant took her *Page 2 
daughter to a police officer who escorted them to a paramedic. The paramedic observed that the infant's skin on her chest was red and peeling, and also noticed a puncture wound on the infant's inner thigh. Although appellant first declined, her niece persuaded appellant to take the infant to Cincinnati Children's Hospital. Preliminary examinations revealed that the infant had damaged skin tissue on her right upper chest, left armpit, nose, right upper thigh, and genitalia. In addition, x-rays revealed that the infant had three broken ribs, two more ribs that had been broken and were healing, and a broken femur.
 {¶ 3} Appellant was interviewed by officers at the Milford Police Department after her daughter's examinations. At that time, appellant stated that she did not know how the injuries occurred, but she knew her husband didn't cause them. However, appellant later admitted that she observed her husband being too rough with their daughter on several occasions. Specifically, appellant stated that Joseph squeezed the infant too tightly on four occasions, shook her violently twice, pinched her nipples on four occasions, pulled roughly on her leg, changed her diaper roughly, and slammed her into a crib.
 {¶ 4} Appellant was charged with two counts of endangering children in violation of R.C. 2919.22(A) ("Count 1") and R.C. 2919.22(B)(1) ("Count 2"). On March 14, 2006, the state filed a motion in limine to exclude evidence that appellant exhibited symptoms consistent with battered-woman syndrome. After the parties submitted briefs on this issue, the trial court held a hearing, and granted the state's motion. The matter proceeded to a jury trial, and the jury found appellant guilty as to Count 1, but could not reach a verdict as to Count 2. Appellant was sentenced to serve a four-year prison term. Appellant appeals her conviction, raising three assignments of error. Because appellant's first and second assignments of error are related, we discuss them together.
 {¶ 5} In her first assignment of error, appellant argues that she was deprived of her due process rights as provided by the Fifth andFourteenth Amendments to the United States *Page 3 
Constitution when the trial court excluded expert testimony on battered-woman syndrome. We disagree.
 {¶ 6} Appellant was convicted of endangering children in violation of R.C. 2919.22(A), which provides, in part: "[n]o person, who is the parent * * * of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support."
 {¶ 7} While R.C. 2919.22(A) does not specify a degree of mental culpability, the Ohio Supreme Court has held that the "[existence of the culpable mental state of recklessness is an essential element of the crime of endangering children." State v. McGee, 79 Ohio St.3d 193, 195,1997-Ohio-156, citing State v. Adams (1980), 62 Ohio St.2d 151. See, also, R.C. 2901.21(B).
 {¶ 8} Appellant argues that if admitted, the expert testimony of Dr. James Borack, a psychologist specializing in child and family forensic psychology, would show that as a result of battered-woman syndrome, appellant did not act recklessly with regard to her daughter's health or safety. Dr. Borack's proffered testimony included an explanation of the nature and causes of battered-woman syndrome. Dr. Borack also stated that he examined appellant, and that appellant exhibited symptoms of someone who has experienced "terroristic abuse" and post-traumatic stress disorder. After hearing Dr. Borack's proffered testimony and considering the parties' briefs, the trial court granted the state's motion to exclude the expert testimony.
 {¶ 9} As a preliminary matter, we note that a trial court's ruling on a motion in limine is a tentative interlocutory ruling which reflects the trial court's anticipated treatment of the evidence issue. State v.Grubb (1986), 28 Ohio St.3d 199, 201-202. The party seeking to introduce the evidence, who has been temporarily precluded from doing so, must offer the evidence at trial when the issue is actually reached, by proffer or otherwise, to allow the court *Page 4 
to make a final determination as to its admissibility and to preserve the record for appeal. Deible v. Auto Owner's Ins. Co., Stark App. No. 2006CA00211, 2007-Ohio-3429, citing Grubb at 203; Evid.R. 103(A)(2).
 {¶ 10} The record indicates that appellant proffered the testimony of Dr. Borack before presenting her defense. At that time, the trial court accepted appellant's proffer into the record, but excluded the testimony as evidence. Accordingly, we find that appellant properly preserved this issue for appeal.
 {¶ 11} In granting the state's motion in limine to exclude Dr. Borack's testimony, the trial court relied on Evid.R. 702, andDaubert v. Merrell Dow Pharmaceuticals, Inc. (1993), 509 U.S. 579, 113 S.Ct. 2786. A trial court's determination as to whether a witness possesses the qualifications necessary to allow expert testimony lies within the sound discretion of the trial court. State v. Clark (1995),101 Ohio App.3d 389, 411. Such determination will not be reversed by an appellate court unless there is a clear showing of an abuse of discretion on the part of the trial court. Id.
 {¶ 12} Evid.R. 702 provides, "[a] witness may testify as an expert if all of the following apply:
 {¶ 13} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 14} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 15} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 {¶ 16} "(1) The theory upon which the procedure, test, or experiment is based is *Page 5 
objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 {¶ 17} "(2) The design of the procedure, test, or experiment reliably implements the theory;
 {¶ 18} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
 {¶ 19} In Daubert, the Supreme Court "interpreted Fed.R.Evid. 702, the federal version of Evid.R. 702, as vesting the trial court with the role of gatekeeper. This gatekeeping function imposes an obligation upon a trial court to assess both the reliability of an expert's methodology as well as the relevance of any testimony offered before permitting the expert to testify. [The Ohio Supreme Court] adopted this role for Ohio trial judges in Miller v. Bike Athletic Co. (1998), 80 Ohio St.3d 607 * * *." (Internal citations omitted.) Terry v. Caputo, Ohio St.3d,2007-Ohio-5023, ¶ 24.
 {¶ 20} "The test for reliability requires an assessment of the validity of the expert's methodology, by applying with flexibility several factors set forth in Daubert. The trial court should first assess whether the method or theory relied upon has been tested. Next, it should consider whether the theory has been the subject of peer review, and then whether the method has a known or potential error rate. Finally, Daubert instructs trial courts to look at whether the theory has gained general acceptance in the scientific community. None of these factors, of course, is dispositive of the inquiry, and when gauging the reliability of a given expert's testimony, trial courts should focus `solely on principles and methodology, not on the conclusions' generated." (Internal citations omitted.) Id. at ¶ 25.
 {¶ 21} "The trial court's Daubert responsibilities, however, do not end with reliability, because the trial court's gatekeeping function also requires it to judge whether an expert's testimony is `"relevant to the task at hand" in that it logically advances a material aspect of the proposing party's case.' This aspect, which courts have colloquially labeled `fit,' requires *Page 6 
a `"connection between the scientific research or test result * * * and particular disputed factual issues in the case."' Reliability and relevance are not mutually exclusive findings, and they may overlap in some instances. As one federal court stated, `[A] determination regarding the scientific validity of a particular theory requires not only an examination of the trustworthiness of the tested principles on which the expert opinion rests, but also an analysis of the reliability of an expert's application of the tested principals [sic] to the particular set of facts at issue.' (Emphasis sic.)" (Internal citations omitted.) Id. at ¶ 26.
 {¶ 22} In excluding Dr. Borack's testimony, the trial court held that appellant failed to meet the Daubert test. The court found that expert testimony on battered-woman syndrome has been found to be reliable and admissible when self-defense or defense of others is at issue. However, the court found that the use of such testimony has not been proven to be reliable where the issue is a defendant's failure to ensure the safety of her child.
 {¶ 23} When appellant renewed her attempt to admit Dr. Borack's testimony at trial, the trial court reiterated the reasons behind its previous ruling. In addition, the court relied on Evid.R. 403(A), which provides, "[although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 24} "The issue of whether testimony or evidence is relevant or irrelevant, confusing or misleading, is best decided by the trial judge, who is in a significantly better position to analyze the impact of the evidence on the jury." Renfro v. Black (1990), 52 Ohio St.3d 27, 31. A trial court's decision to admit or exclude evidence will not be reversed absent an abuse of discretion. State v. Hancock, 108 Ohio St.3d 57,2006-Ohio-160, ¶ 122.
 {¶ 25} In State v. Koss (1990), 49 Ohio St.3d 213, the Ohio Supreme Court first recognized the admissibility of expert testimony on battered-woman syndrome in support of a self-defense claim. InKoss at 216, the court stated, "[e]xpert testimony regarding the *Page 7 
battered woman syndrome can be admitted to help the jury not only to understand the battered woman syndrome but also to determine whether the defendant had reasonable grounds for an honest belief that she was in imminent danger when considering the issue of self-defense."
 {¶ 26} The General Assembly later enacted R.C. 2901.06, which recognizes the value of battered-woman syndrome testimony and sets forth that it may be employed in self-defense cases. R.C. 2901.06 provides:
 {¶ 27} "(A) The general assembly hereby declares that it recognizes both of the following, in relation to the `battered woman syndrome:'
 {¶ 28} "(1) That the syndrome currently is a matter of commonly accepted scientific knowledge;
 {¶ 29} "(2) That the subject matter and details of the syndrome are not within the general understanding or experience of a person who is a member of the general populace and are not within the field of common knowledge.
 {¶ 30} "(B) If a person is charged with an offense involving the use of force against another and the person, as a defense to the offense charged, raises the affirmative defense of self-defense, the person may introduce expert testimony of the `battered woman syndrome' and expert testimony that the person suffered from that syndrome as evidence to establish the requisite belief of an imminent danger of death or great bodily harm that is necessary, as an element of the affirmative defense, to justify the person's use of the force in question. The introduction of any expert testimony under this division shall be in accordance with the Ohio Rules of Evidence."
 {¶ 31} In State v. Haines, 112 Ohio St.3d 393, 2006-Ohio-6711, the Ohio Supreme Court addressed whether evidence of battered-woman syndrome can be introduced by the state in a domestic violence case to aid the trier of fact in understanding the victim's state of *Page 8 
mind. The court stated, "the party seeking to introduce battered woman syndrome evidence must lay an appropriate foundation substantiating that the conduct and behavior of the witness is consistent with the generally recognized symptoms of the battered woman syndrome, and that the witness has behaved in such a manner that the jury would be aided by expert testimony which provides a possible explanation for the behavior." Id. at ¶ 47, quoting State v. Stringer (1995), 271 Mont. 367, 378.
 {¶ 32} The court continued, stating, "[e]vidence generally establishing the cycles of a battering relationship is an appropriate foundation for battered-woman-syndrome expert testimony."Haines at ¶ 48. The court reiterated what it held in Koss, that, "in order to be classified as a battered woman, the couple must go through the battering cycle at least twice. Any woman may find herself in an abusive relationship with a man once. If it occurs a second time, and she remains in the situation, she is defined as a battered woman." Id. at 49, quoting Koss at 216.
 {¶ 33} Further, the court held:
 {¶ 34} "Even when [battered-woman syndrome testimony] is shown through a proper foundation, a court must carefully weigh whether the expert testimony violates Evid.R. 403(A) * * *. * * * An acceptable balance is best achieved through a tailoring of the expert's testimony. Limitations placed upon the expert's testimony — `the expert cannot opine that complainant was a battered woman, may not testify that defendant was a batterer or that he is guilty of the crime, and cannot comment on whether complainant was being truthful' — dispel concerns about unfair prejudice. The rule in most jurisdictions is that general testimony regarding battered-woman syndrome may aid a jury in evaluating evidence and that if the expert expresses no opinion as to whether the victim suffers from battered-woman syndrome or does not opine on which of her conflicting statements is more credible, such testimony does not interfere with or impinge upon the jury's role in determining the credibility *Page 9 
of witnesses. `[T]he prosecutorial introduction of testimony on the battered woman syndrome must be in accordance with the applicable Ohio Rules of Evidence. The best way to approach this is by utilizing the limited format advocated by the courts in [State v. Ciskie (1988), 110 Wash.2d 263, 751 P.2d 1165] and [Arcoren v. United States (C.A.8, 1991),929 F.2d 1235]. Under this approach, experts who are called to testify in domestic violence prosecutions must limit their testimony to the general characteristics of a victim suffering from the battered woman syndrome. The expert may also answer hypothetical questions regarding specific abnormal behaviors exhibited by women suffering from the syndrome, but should never offer an opinion relative to the alleged [battered woman] in the case.'" Id. at ¶ 56.
 {¶ 35} After reviewing the record, including Dr. Borack's proffered testimony, we find no abuse of the trial court's discretion in excluding the expert testimony. Appellant's reliance on Haines is misplaced, as our interpretation of Haines precludes admission of Dr. Borack's testimony. In his testimony, Dr. Borack does provide general characteristics of a victim suffering from the battered-woman syndrome as permitted in Haines. See id. However, Dr. Borack's testimony goes beyond merely providing a general context for appellant's behavior, and went to the very question the jury was required to determine — whether appellant had the culpable mens rea necessary for committing endangering children. On several occasions, Dr. Borack gave his opinion that appellant was a battered woman, that appellant suffered from battered-woman syndrome, and that as a result, her decision-making process was adversely affected.
 {¶ 36} For example, Dr. Borack stated:
 {¶ 37} "I proceeded to complete an evaluation which included * * * an additional interview and a battery of psychological testing to look at issues of her capacities [including] her character, her personality, her strengths, her weaknesses. And because during the *Page 10 
course of my interview with her * * * she appeared highly traumatized. * * * And she reported terroristic abuse * * * [b]y her husband[.] * * * [I]t was clinically appropriate for me to assess for expected possible effects of that terroristic abuse on her psychological functioning."
 {¶ 38} Appellant's attorney later asked Dr. Borack, "[b]ased upon the results of these tests and your clinical interviews, were you able to form some opinions about [appellant]?" Dr. Borack responded:
 {¶ 39} "Yes. * * * [T]here was some indication [appellant] was exaggerating to some degree how bad she felt in these arenas. It's not uncommon to find that, but it has been characterized as sort of a cry for help. * * * [T]he data indicated * * * that she was reporting real problems perhaps to some degree exaggerating their intensity consciously or otherwise in an attempt to call attention to the fact that she was suffering."
 {¶ 40} Appellant's attorney then asked what problems appellant was reporting, and Dr. Borack stated:
 {¶ 41} "She was reporting a profile very, very consistent with post-traumatic stress disorder, post-traumatic stress reaction, high levels of anxiety, intrusive recollections of traumatic events, ruminative worry, alienation, and disassociation * * *. So, you know, her profile was very consistent with what one would find in a woman who has been battered. * * * [S]he was also showing, displaying, and reporting a fairly typical array of symptoms [and] responses * * * that one would expect from such abuse. And so, the correlation was quite high in her case affirming that it would be appropriate to diagnose her with post-traumatic stress disorder. And when you make that diagnosis you have to identify [the] stressor, and that stressor being the ongoing terroristic abuse that she had suffered at the hands of her husband."
 {¶ 42} Appellant's counsel then asked Dr. Borack, "of the clinical interviews and the testing, would you have an opinion upon how these conditions that you've described that *Page 11 
were inherent in [appellant] would affect her decision making process?" Dr. Borack responded:
 {¶ 43} "Both generally and specifically anyone in a very traumatic and terrifying situation — which it would appear that she had been in for quite a long period of time — over time one has to — and I saw signs of this in her, minimize to themselves the risks that are in front of that. * * * And so number one her perceptions would he affected toward a muting of risk. So, there's a minimization, and this is very typical of battered women."
 {¶ 44} This type of expert testimony is precisely the type of testimony that Haines prohibits. See Haines at ¶ 56. Appellant did not limit Dr. Borack's testimony to "general characteristics of a victim suffering from the battered woman syndrome" as required byHaines, but attempted to admit testimony that appellant was a battered woman.
 {¶ 45} Further, appellant has not demonstrated the required "connection between the scientific research or test result * * * and particular disputed factual issues in the case." See Caputo,2007-Ohio-5023 at ¶ 26. When asked whether appellant reported these problems as resulting from her relationship with her husband, Dr. Borack responded, "[w]ell, [appellant] herself was not proffering that connection to me. She wasn't saying I feel this way because of what he did to me."
 {¶ 46} While expert testimony on battered-woman syndrome has been found to be reliable in certain circumstances, neither R.C. 2901.06, nor any other statute or case law permits the use of such expert testimony to negate the mens rea element necessary to be convicted of endangering children. We decline to extend the permissible use of expert testimony in this manner.
 {¶ 47} We find no abuse of the trial court's discretion in relying on Evid.R. 403(A) to exclude Dr. Borack's testimony. As appellant failed to meet the requirements set forth in Haines, any testimony related to battered-woman syndrome would have had the potential to *Page 12 
mislead the jury and cause confusion of the issues.
 {¶ 48} Similarly, in her second assignment of error, appellant argues she was deprived of her due process rights when the trial court excluded all evidence of psychological and physical abuse appellant allegedly endured. However, because appellant failed to meet the requirements set forth in Haines, admission of allegedly abusive treatment also would have had the potential to mislead the jury and cause confusion of the issues. Accordingly, we find no abuse of the trial court's discretion in excluding testimony related to any alleged abuse.
 {¶ 49} Appellant's first and second assignments of error are overruled.
 {¶ 50} In her third assignment of error, appellant argues the trial court erred in denying appellant's motion to dismiss Count 2 of the indictment. Appellant maintains that failure to dismiss Count 2 subjected her to double jeopardy. We disagree.
 {¶ 51} The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution ensures that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." Similarly, Section 10, Article I, Ohio Constitution provides, "No person shall be twice put in jeopardy for the same offense."
 {¶ 52} However, in the trial court's "JUDGMENT ENTRY OF SENTENCE" filed on July 27, 2006, the court stated, "Pursuant to Crim.R. 48(A), the State requested leave of court to dismiss Ct. #2 of the indictment. This charge is hereby dismissed and the prosecution on this charge shall terminate accordingly."
 {¶ 53} Because the state dismissed Count 2, appellant was not subjected to double jeopardy. Appellant's third assignment of error is overruled.
 {¶ 54} Judgment affirmed.
POWELL, J., concurs.
 WALSH, J., concurs in judgment only. *Page 1